EDYTH BUSH AND OTHERS v.
HERSCHEL S. ARROWOOD AND OTHERS.
THE BUSH FOUNDATION, APPELLANT.
ROBERT J. CHRISTIANSON AND OTHERS,
RESPONDENTS.

198 N. W. 2d 263.

May 26, 1972—No. 43340.

*Briggs & Morgan, Frank Hammond, Terence N. Doyle,* and *Douglas R. Haddock,* for appellant.

*Robert J. Christianson, Wright W. Brooks,* and *John E. Harris,* pro se, and *Faegre and Benson,* for respondents.

TODD, JUSTICE.

The Bush Foundation appeals from a judgment of the district court requiring the foundation to pay attorneys' fees to Robert J. Christianson, Wright W. Brooks, and John E. Harris, respondents pro se, who were hired by the attorney general to represent him in litigation affecting the foundation. We reverse.

This matter comes before this court as part of a long, protracted dispute arising in 1966 following the death of Archibald G. Bush, one of the founders of Minnesota Mining and Manufacturing Company. Under his last will, Mr. Bush left the bulk of his estate, amounting to upwards of $150,000,000, to The Bush Foundation, a nonprofit Minnesota corporation that he had established in 1953. Immediately following his death, a controversy arose between his surviving spouse and the directors of the foundation. In order to avoid litigation, an agreement was made creating a bicameral board of directors, which had the effect of giving each faction a veto over the foundation's activities. This compromise was made in the face of the threat of Mrs. Bush to attempt to void her consent to the will and take her statutory share of the estate, which would have substantially reduced the residuary bequest to the foundation. The compro-

mise, however, proved ineffectual, and compounded rather than solved the problems.

In January 1968, Mrs. Bush commenced this action in the district court. Douglas M. Head, the then attorney general, was made a party defendant because "[u]nder the laws of the State of Minnesota he may be charged with responsibility incident to certain of the matters alleged in [the] Complaint." Attorney General Head retained the above-named respondents as special counsel to represent him in this matter. It is uncontroverted in the record that these attorneys performed substantial and meritorious service in fulfilling the obligations of the attorney general in this complicated procedure. Due in a large part to the services performed by these attorneys, a stipulation of settlement was finally arrived at, and, on April 10, 1970, a judgment was entered in district court which disposed of the right of the widow to renounce the will of Mr. Bush, provided a workable board of directors for the foundation, and in many other respects provided an orderly and competent means of controlling and managing The Bush Foundation. None of the parties affected by that judgment appealed, and the res judicata effect of that judgment obviously is a substantial benefit to the foundation.

As part of the stipulation which led to the judgment, respondent attorneys were directed by the court and the parties to perform additional services outside the scope of their representation of the attorney general. The stipulation of settlement provided that respondents would receive reasonable fees and expenses for these additional services but left unresolved the question of whether respondents would be compensated by the foundation for work done while they were acting solely as the attorney general's special counsel.

On July 8, 1971, in response to a motion by respondents, the trial court granted respondents their fees and expenses for the additional activities from the foundation. In addition to this amount, which had been agreed on by all parties, the trial court also allowed respondents to collect from the foundation that

portion of their fee which had not been paid by the attorney general, who had advised them that he had insufficient funds to pay their entire bill.

1. The reasonableness of the total charges made by respondents in rendering their services to the attorney general is not in dispute. The only question on this appeal is the validity of the court's order directing that the foundation pay a portion of these attorneys' fees. The trial court in its memorandum accompanying its order for judgment said:

"The 'substantial benefit' rule is well established in Minnesota, particularly in trust cases, and there is nothing in the Minnesota statutes or the case law of the State of Minnesota that justifies a denial of the application of that rule insofar as payment of fees by The Bush Foundation to special counsel for the Attorney General is concerned."

The substantial benefit rule has been applied by this court in a variety of situations where private litigants instituted or appeared in litigation which resulted in benefits to the public or to a class of persons. In one of these cases, In re Living Trust Created by Atwood, 227 Minn. 495, 500, 35 N. W. 2d 736, 739 (1949), this court said:

"* * * Obviously, a benefit to the entire trust, aside from benefits conferred by acts which protect or increase the trust corpus, may, in exceptional cases, also be conferred by litigation which is unquestionably essential to a judicial determination of the meaning of ambiguous language employed by the settlor, where the administration of the trust has broken down because the rights of the beneficiaries and the duties and powers of the trustees cannot with reasonable safety be ascertained without a judicial determination.

"* * * Costs and reasonable counsel fees may be allowed to the trustees where instructions have been properly sought. * * * It is also recognized that costs and attorneys' fees may be allowed out of the trust estate to any necessary party who is

acting primarily for the benefit of the estate in securing a clarification of ambiguous trust-instrument language where a reasonable doubt as to its meaning exists. * * * In such cases, the litigation is indispensable to the proper administration of the trust and is a proper charge thereon. * * * In the sound and cautiously exercised discretion of the court, and not as a matter of right, attorneys' fees and other expenses reasonably and necessarily incurred by all necessary parties to litigation may be allowed and properly charged to the trust estate where such litigation, with respect to substantial and material issues, is necessary in order to resolve the meaning and legal effect of ambiguous language used by the settlor in the trust instrument, if an adjudication thereof is essential to a proper administration of the trust, and if, without unnecessary expense or delay, the litigation is conducted in good faith for the primary benefit of the trust as a whole. The situation in the instant case clearly indicates that the adjudication was primarily for the benefit of the entire trust, although as an incident thereof respondent and plaintiff both asserted rights which if recognized would have redounded to their sole benefit."

This case was followed in St. Paul Elec. Workers Welfare Fund v. Cartier, 288 Minn. 483, 182 N. W. 2d 187 (1970). Since the litigation conferred substantial benefits on the trust, the court allowed the attorneys' fees to be charged against the trust fund. Similarly, in a case involving litigation brought by the remaindermen to have a receiver appointed to take possession of the property to prevent waste and destruction of the estate, the court allowed attorneys' fees to the remaindermen since the suit was necessary to protect the rights of owners of present and future estates. Beliveau v. Beliveau, 217 Minn. 235, 14 N. W. 2d 360 (1944). Stockholders' derivative actions, such as Bosch v. Meeker Co-op. Light & Power Assn. 257 Minn. 362, 101 N. W. 2d 423 (1960), are a third type of case in which we have applied these principles. In Bosch, the court held that, since the stock-

holders' derivative action resulted in substantial benefit to the company, attorneys' fees should be allowed.

In Regan v. Babcock, 196 Minn. 243, 264 N. W. 803 (1936), a private party commenced suit to have six state highway paving contracts declared void. The attorney general subsequently intervened in the action and in effect joined with the plaintiffs, re-alleging substantially the same facts contained in the plaintiffs' complaint and asking that the contracts be declared void. The plaintiffs went forward with the action and subsequently obtained a judgment declaring the contracts void and effecting a substantial saving to the State of Minnesota. This court upheld an award of attorneys' fees to plaintiffs' attorneys out of the funds so saved the state.

In all of these matters, the courts have applied principles of equity as enunciated in Matter of Roosevelt, 131 Misc. 800, 805, 228 N. Y. S. 323, 329, and adopted by this court in Beliveau (217 Minn. 248, 14 N. W. 2d 367):

" '* * * [I]t is well settled that a court of equity has inherent powers to make an allowance for expenses, including counsel fees, out of a fund that has been benefited and protected by one or more persons acting not merely for themselves but as "*quasi* trustees" for the benefit of many others interested in the same fund.' "

The trial court applied these principles in the instant case and extended the rule of substantial benefit to allow recovery of fees by special counsel for the attorney general. Under the facts of this case, there is no question that substantial benefits have been conferred upon The Bush Foundation. However, it is the opinion of this court that the statutory provisions affecting the attorney general precluded his right and the right of his special counsel to recover any attorneys' fees from the foundation.

2. Charitable corporations, such as The Bush Foundation, have been held by our court to be governed by the provisions of Minn. St. 501.12. In re Estate of Quinlan, 233 Minn. 35, 40, 45

N. W. 2d 807, 810 (1951); In re Estate of Peterson, 202 Minn. 31, 37, 277 N. W. 529, 533 (1938). Section 501.12, subd. 3, provides in part:

"* * * The attorney general shall represent the beneficiaries in all cases arising under this section and it shall be his duty to enforce such trusts by proper proceedings in the courts."

It is clear from this language that the attorney general is compelled to be a party in the present action. This statutory mandate distinguishes the role of the attorney general in these cases from that of a private litigant. A private litigant appears under no compelling statutory mandate. However, the equity rules which we have applied in the cases cited above represent a public policy of encouraging individuals to advance before the court meritorious claims broader than their own private interests. Newman v. Piggie Park Enterprises, Inc. 390 U. S. 400, 88 S. Ct. 964, 19 L. ed. 2d 1263 (1968). This purpose was recognized in the St. Paul Electrical Workers case, where this court said (288 Minn. 488, 182 N. W. 2d 189):

"* * * In both situations there is merit in permitting beneficiaries to contest questionable use of trust funds without the prohibitive effect which would probably result if beneficiaries losing claims were always required to pay all fees and expenses."

In this case there is no danger of a prohibitive effect on intervention since there is an affirmative statutory duty on the attorney general to intervene. Attorney General Head apparently decided that he could best meet this statutory duty by employing outside counsel to represent him. Accordingly, respondents were hired under the provisions of Minn. St. 8.02, which provide in part:[1]

---

[1] There is some discussion in the briefs as to whether respondents were hired under Minn. St. 8.06, which provides: "The attorney general shall act as the attorney for all state officers and all boards or commissions created by law in all matters pertaining to their official duties and, when requested by the attorney general, it shall be the duty

"The attorney general shall have power to employ such assistance, whether lay, legal, or expert, as he may deem necessary for the protection of the interests of the state through the proper conduct of its legal business."

3. Although the attorney general has the right under § 8.02 to hire special counsel, in construing the method of payment of such special counsel, we must consider the provisions of Minn. St. 15A.01, which provide:

"Subdivision 1. The yearly salaries of the state officers and employees mentioned in this chapter shall be as herein fixed.

"Subd. 2. The salaries provided in this chapter for the officers and employees named herein shall be in full payment for all services that may be rendered by them either in the perform-

---

of any county attorney of the state to appear within his county and act as attorney for any such board, commission, or officer in any court of such county; and when, in his judgment, the public welfare will be promoted thereby the attorney general may, upon request in writing, employ a special attorney for any such board, commission, or officer and fix his compensation, and when such special attorney is so employed his fees or salary shall be paid from the appropriation made for such board, commission, or officer. Except as herein provided, no board, commission, or officer shall hereafter employ any attorney at the expense of the state.

"Whenever the attorney general, the governor, and the chief justice of the supreme court shall certify, in writing, filed in the office of the secretary of state, that it is necessary, in the proper conduct of the legal business of the state, either civil or criminal, that the state employ additional counsel, the attorney general shall thereupon be authorized to employ such counsel and, with the governor and the chief justice, fix his compensation. Except as herein stated, no additional counsel shall be employed and the legal business of the state shall be performed exclusively by the attorney general and his assistants."

From the face of the statute, it is apparent that § 8.06 applies only to the employment of "house counsel" for various state boards, commissions, or officers; furthermore, the certificate provided by paragraph 2 of the statute was never prepared or executed. The provisions of this statute cannot be considered.

ance of their regular or special duties or while acting as a member or employee of any state board or commission.

"Subd. 3. All fees of any nature collected by any officer or employee named in this chapter shall be paid into the state treasury."

Our statutes expressly prohibit the attorney general from being paid by the foundation. Section 15A.01, subd. 2, clearly specifies that all salaries, including those of the attorney general and his employees, shall be in full payment for their services. Respondents argue that this prohibition must be considered together with subd. 3 and that nothing would prevent payment of fees and expenses by the foundation to the attorney general had he handled the matter himself as long as such sum was turned into the state treasury. We reject this interpretation of the statute and conclude that the language is clear and explicit that his sole compensation for performing his statutory duties is as defined by the legislature under the statute.

4. Since the right of respondents to recover in this matter is a derivative right and is coextensive with the right of the attorney general to make a similar recovery, we are unable to permit the allowance of fees to stand.

5. This is a case of first impression in Minnesota. However, other jurisdictions that have considered this issue have uniformly disallowed the payment of attorneys' fees to the attorney general or his special counsel. The respondents were unable, and this court has been unable, to find a single case which allowed attorneys' fees to the attorney general or his special counsel. All those cases cited by respondents and found by this court regarding the substantial benefit theory involved litigation commenced by private litigants.

One of the earlier cases, Attorney-General v. Continental Life Ins. Co. 88 N. Y. 571 (1882), involved an insolvent insurance company in the hands of a receiver and a request by the special counsel employed by the attorney general for allowance of attor-

neys' fees. In rejecting the request, the New York Court of Appeals said (88 N. Y. 575):

"* * * The statute, by requiring the service of papers relating to applications for allowances, to be served on the attorney-general, by necessary intendment, imposes upon him the duty of resisting all efforts to deplete the fund, by extravagant allowances, or improper charges. In the performance of this duty, the attorney-general represents the State. The duty imposed upon him by this statute, is a most responsible one, and if faithfully performed, no greater service can be rendered to the administration of justice, by that high officer. It was not we think contemplated when the act of 1880 was passed that the State should be indemnified out of the assets of an insolvent corporation, for the services or expenses of its officers, or agents, rendered in carrying out the provisions of the act. The general policy of the State, is to compensate its officers, by fixed salaries, and when special counsel are authorized to be employed to assist the attorney-general, the statute conferring the authority also provides the manner of ascertaining the compensation, and the mode of payment. * * *

"It is inconsistent with the duty imposed by the act of 1880, that the attorney-general should be placed in the attitude of applying to the court for allowances to his own assistants. The State intervenes, as *parens patriae*, for the protection of the fund, and those beneficially interested, and it is not consistent with its dignity, nor was it, we think, contemplated, that the value of the services of its agents in the execution of this voluntary trust, should be a charge upon the assets of the insolvent corporation. We are not insensible to the consideration that the act of 1880, imposes onerous duties upon the attorney-general, and that adequate assistance may not have been provided to enable him to perform this additional labor. It would be greatly to be regretted if this decision should hamper the action of the attorney-general under this salutary statute. The legislature, however, can afford such relief as may be necessary. But to per-

mit the State to participate in the division of the assets of insolvent corporations in the hands of a receiver, under a claim for discretionary allowances, or to charge the fund for services of special counsel of the State, is, we think, contrary to principle and to the policy of our legislation."

Wemme v. First Church of Christ, 110 Ore. 179, 219 P. 618, 223 P. 250 (1924), involved a fact situation very similar to the present case. There a decedent had directed under his last will and testament that an endowment fund be created out of his estate for the purpose of providing a maternity home or a lying-in hospital for unfortunate or wayward girls in the city of Portland, Oregon. When litigation arose involving actions of the trustees in administering the fund, the attorney general intervened. He was not compelled by statute to intervene, but the Oregon court held that the common law required that he intervene in this type of litigation. He employed special counsel to represent him, and through the efforts of the special counsel the trust was preserved and was, therefore, substantially benefited. At the time of that action, the Oregon statutes contained a provision very similar to our statute regarding compensation of state officers and employees.[2] In response to the attorney's application to the court for an order directing the trust fund to pay his fees, the Oregon court said (110 Ore. 216, 223 P. 251):

---

[2] Ore. Laws, § 2978 (1920) provides: "That the salaries provided in this act shall be in lieu of all salaries, fees, commissions, and emoluments now received or enjoyed by any of the said officers mentioned herein, and any and all fees and commissions of any kind, name, or nature hereafter collected by any of said officers for any service performed by him by virtue of his office or collected by him by virtue of his office, shall be paid into the treasury of this state on or before the tenth day of the month following the collection thereof, accompanied by an itemized statement of the services for which the same were collected, and each of said officers shall, in his biennial report, set forth a statement of all moneys so collected and paid over to the state treasurer."

"The statutes clearly prohibit compensation to the Attorney General out of the fund, and no authority is found in the rules of equity practice which warrants such an allowance to the Attorney General. While allowances for attorneys' fees out of the fund in the control of a court of equity are sometimes made directly to the attorneys themselves, the right of such attorneys thereto in every such case is dependent upon the right of their client to such fees: Schmidt v. Oregon Min. Co., 28 Or. 9, 30 (40 Pac. 406, 1014, 52 Am. St. Rep. 759). If the client is not entitled to costs, including attorney's fees, out of the fund, no allowance can be made directly to the attorney.

\* \* \* \* \*

"No authority can be found in the decisions of the courts or in any statute which authorizes the Attorney General to employ special counsel and charge a fund in litigation with payment of their services.

" 'In the absence of specific authority such funds cannot be ordered by the court to be paid for any purpose, except by express authority of the legislature.' People v. Woodbury, 213 N. Y. 21, 59 (106 N. E. 932).

\* \* \* \* \*

"The right of the Attorney General to costs, as between party and party, out of a charity fund, is supported by authority (Attorney General v. Ashburnham, 1 Sim. & St. Rep. 394), but diligent search has failed to reveal any adjudicated case, either in England or the United States, holding the Attorney General, or special counsel authorized to appear for him, entitled to attorney's or solicitor's fees out of funds belonging to a public charity which was the subject of the litigation.

\* \* \* \* \*

"In view of the large number of cases that have arisen concerning funds belonging to public charities, the absence of an allowance in any of them of counsel fees out of the fund, to the Attorney General or his representatives, is a strong argument

against the power or authority of a court of equity to impose a charge of that character upon such a fund."

The Wemme case was followed in Thatcher v. City of St. Louis, 343 Mo. 597, 122 S. W. 2d 915 (1938). In that case, the Missouri attorney general had appointed special counsel to represent him in his defense against an action to terminate a charitable trust. The attorney so appointed successfully defended the action and preserved the trust. The court, under constitutional provisions very similar to the Minnesota statutes,[3] disallowed the recovery of attorneys' fees from the trust fund.

In Beck v. Good, 147 Kan. 578, 77 P. 2d 968 (1938), the Kansas Supreme Court held that under their statute requiring the attorney general to probate the estates of decedents who had no known heirs, the estate could not be charged for attorneys' fees of special counsel hired to represent the attorney general. The court there held that the only recourse for the attorney so employed was against the attorney general and the State of Kansas.

No American court has yet quarreled with the logic or legal principles set out in these cases. We are convinced that they represent not only the majority rule, but also the correct rule. In the Wemme case, the Oregon Supreme Court presented an excellent summary (110 Ore. 224, 223 P. 253):

"From the foregoing review of the authorities, it is seen that the right to an allowance such as that asserted upon the motion under consideration has not been recognized in any jurisdiction;

---

[3] Mo. Const. art. V, § 24, which applied to the attorney general and other elective executive officers, read as follows:

"The officers named in this article shall receive for their services a salary to be established by law, which shall not be increased or diminished during their official terms; and they shall not, after the expiration of the terms of those in office at the adoption of this Constitution, receive to their own use any fees, costs, perquisites of office, or other compensation. All fees that may hereafter be payable by law for any service performed by any officer provided for in this article shall be paid in advance into the state treasury."

and the great array of decisions, in none of which such an allowance was made, though frequent occasion must have arisen for doing so, argues strongly against the policy and propriety of awarding counsel fees out of a fund in court to the Attorney General or his representative in any case. To allow the motion would arbitrarily extend the scope of firmly established rules of equity practice, the utmost limitations of which were long since fixed by authoritative adjudications. We are not inclined to do this, and accordingly the motion is denied."

6. We hold that under the statutes of the State of Minnesota the attorney general or his special counsel are not entitled to charge a charitable trust fund with attorneys' fees incurred in representing the interests of the state in litigation involving that fund. The attorneys in this case must look to the attorney general or the legislature for funds to pay the legitimate and reasonable claim which is the subject of this litigation.

Reversed.

MR. JUSTICE MURPHY and MR. JUSTICE OTIS took no part in the consideration or decision of this case.

MR. JUSTICE MACLAUGHLIN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.