224 N.W.2d 489 (1974)
In re ESTATE of Archibald G. BUSH, a.k.a. A. G. Bush, Decedent.
H. Clifford LEE, et al., Co-Executors of the Estate of Edyth D. Bush, Deceased, Appellants,
v.
Herschel S. ARROWOOD and Mary Jane Dickman, as Executors of the Estate of Archibald G. Bush, Deceased, Respondents,
The Bush Foundation, Respondent,
Warren Spannaus, Attorney General of the State of Minnesota, Respondent.
No. 44707.
Supreme Court of Minnesota.
November 22, 1974.
Rehearing Denied December 23, 1974.
*491 Robins, Davis & Lyons and Sidney S. Feinberg, Minneapolis, Carlton, Fields, Ward, Emmanual, Smith & Cutler and Edward C. Adkins and Owen Rice, Jr., Tampa, Fla., Arter & Hadden and Thomas V. Koykka, Cleveland, Ohio, for appellants.
Blomquist, Vitko, Langlais & Neimeyer, Neil P. Convery, St. Paul, for Arrowood and Dickman.
Gray, Plant, Mooty & Anderson and Edward J. Callahan, Jr., Minneapolis, for Bush Foundation.
Warren Spannaus, Atty. Gen., Curtis D. Forslund, Sol. Gen., Richard G. Mark, Sp. Asst. Atty. Gen., St. Paul, for Spannaus.
Considered and decided by the court en banc.
KNUTSON, Justice.[*]
This is an appeal from a judgment entered in the District Court of Ramsey County granting summary judgment to defendants and dismissing an appeal from an interlocutory decree of the Probate Court of Ramsey County declaring that Mrs. Bush's purported renunciation of her husband's will was of no force and effect.
The case is the culmination of much protracted litigation and many legal skirmishes resulting from the probate and settlement of the will of Archibald G. Bush. The facts and legal maneuvers of the interested parties are so involved that it seems best to relate them in considerable detail even at the risk of an unduly lengthy opinion in the hope that the decision we now make may see an end to this protracted and expensive litigation.
The trial court has set forth in detail in his memorandum decision the facts essential to a determination of the issues now before us. We doubt that we could improve upon them. So, we adopt as the facts in this decision that portion of the court's memorandum decision that is relevant to the issues involved. We quote and adopt the following from that decision:
"The will of Archibald G. Bush, made April 21, 1965, designated The Bush Foundation as the residuary beneficiary of his estate, with the limitation that, if it be unable to take `or if bequests to it be not deductible for Federal estate tax purposes', the residue would go to the A. G. Bush Institute. It further provided that, if neither the Foundation nor the Institute be able to take or `if bequests to them be not deductible for Federal estate tax purposes', the executors should organize a non-profit corporation to which the residue would go instead.
"Mr. Bush, in his Will, expressly made no provision for his wife, Edyth Bush, because it recited they had `agreed' that the form of `testamentary plans' `set out in this agreement is the most suitable.' Attached to the Will is a `consent of spouse' of the same date, signed by Edyth Bush, which states that she had read the Will and understood its content that she ratified and consented `to all dispositions made in it' and that she understood that the law gives her `a much greater interest' than provided in it.
"Both the Will and the consent were witnessed by persons whom the Court regards to be highly competent lawyers. *492 They were Walter N. Trenerry, Philip Stringer and David R. Roberts.
"The Court understands from the file that both Mr. and Mrs. Bush had previously contributed to The Bush Foundation. The Will gave no direction as to how The Foundation must be operated. It indicated only that it must be able to take and that the donor's bequests to it be `deductible for Federal estate tax purposes'. And it suggested the thought that whatever corporation might be formed to take be `operated exclusively for religious, charitable, scientific, literary or educational purposes, including the encouragement of art'.
"The Will specifically gave Mr. Bush's Florida house to the Foundation along with a proviso that Mrs. Bush could occupy the premises so long as she might wish without charge. Mr. Bush died at Winter Haven, Florida, on January 16, 1966. His estate has been in probate in Ramsey County District Court in Minnesota since early after that. It has been a subject of controversy almost from the beginning of the probate.
"Notwithstanding her consent attached to the Will, Edyth Bush, after Mr. Bush had died, indicated an intention to renounce the Will's provisions. Under date of August 27, 1966, she entered into an agreement of compromise and settlement of that issue with the executors. Her claim as stated in the written agreement was that `she was not informed of the contents of the said Will, of the extent, nature or character of her husband's estate, of the provisions made for her in the said Will, nor of her statutory rights as the surviving spouse of her said husband'.
"In the compromise agreement, Edyth Bush was to be paid $2,100,000; all the outstanding stock of Bush Management Company was to be sold to her for $250,000; the services of David R. Roberts, and Walter N. Trenerry as counsel for the executors and of H. C. Lee and Philip Stringer as their special counsel would be retained, and a prompt petition would be made to the Ramsey County Probate Court and the County Court of Orange County, Florida, for approval.
"Mrs. Bush in turn agreed in the stipulation of settlement that she had been fully advised by Bernard E. Epton, an attorney of hers in Chicago, of the nature and extent of her husband's estate which would likely exceed $130,000,000, of the provision in the Will giving her a life interest in the Florida home, and of her right under the Minnesota and Florida statutes to renounce her late husband's Will and take half of the estate which would amount to approximately $66,000,000. She further agreed to waive any right to renunciation of the Will and that she confirmed and approved her consent attached to the Will. The instrument stated, in effect, that it had to be approved by the Court to be valid. It was signed by Mrs. Bush and by the executors of the Estate.
"The agreement of compromise was approved by the Probate Court of Ramsey County on August 30, 1966, and by the Orange County, Florida, County Court on September 7, 1966.[1]
"It is to be observed that that agreement contained no mention as to how the Foundation must be operated. The Foundation did agree to provide for two classes of directors. It amended its Articles of Incorporation and By-Laws, accordingly, to provide for the two classes of member-directors and, in effect, that all action of the Foundation `should thereafter be exercised exclusively by a majority vote of each of the two classes of directors on a bicameral basis.' (The appellants' propositions of law and fact on this appeal state that the Foundation and the executors agreed to `be guided by the wisdom and leadership of Mrs. Bush' and to submit to her all requests for gifts or grants.)

*493 "Subsequently, in June of 1967, petition was made to the Ramsey County Probate Court for partial distribution from the Estate to the Foundation. Mrs. Bush was one of the petitioners;[2] and she stated in the document that she was petitioning as the surviving spouse and sole heir of the decedent, as a legatee under his Last Will and Testament, and as a member, Class B director and Chairman of the Board of Directors of The Bush Foundation. Other petitioners were Clarence J. Bassler, Jr., and H. Clifford Lee, as members and Class B directors of the Foundation, and The Bush Foundation itself. The petition recited that it was filed because the representatives had failed to move expeditiously to close the estate. Attorneys for the petitioners were the firm of Oppenheimer, Hodgson, Brown, Wolff and Leach by Benno F. Wolff, Esquire.
"Supporting that petition was a memorandum in favor of the partial distribution, which was submitted by attorneys Benno F. Wolff, Esquire, and David C. Donnelly, Esquire, and Messrs. Oppenheimer, Hodgson, Brown, Wolff and Leach, all of St. Paul and by Theodore C. Diller, Esquire, and Thomas P. Healy, Esquire, and Messrs. Lord, Bissell & Brook, of Chicago. The memorandum recites in part:
`Even if her expired renunciation rights are restorable, which by now the Court must doubt, we now state unequivocally, as we did on oral argument: Mrs. Bush is interested in the entire residue of her husband's estate becoming vested in The Bush Foundation, and not otherwise. She asks the Court to make no reservation on her account.'
"Referring to a Ramsey County District Court action by the Class B against the Class A directors of the Foundation, the memorandum continued:
`The District Court action may involve litigation concerning the corporate structure of the Foundation, but that is not within the jurisdiction or concern of the Probate Court. The residuary bequest having vested in The Bush Foundation as of the date of Mrs. Bush's death, the internal affairs of the Foundation subsequent to that date, though they may become the subject of District Court litigation * * * are not an impediment to the entry of a partial decree * * *.'
The memorandum added:
`* * * the situation in the estate, in the light of the indicated items remaining to be attended to by the executors, is such that there is no plausible reason for delaying the entry of a decree assigning to The Bush Foundation the substantial residue on hand, less only the reserve aforementioned.'
"On March 22, 1968, the Probate Court issued its partial decree of distribution, and set forth that the estate had been substantially administered, that the portion of the residue then available for distribution was of the inventoried value of $45,761,161.03 consisting of Minnesota Mining and Manufacturing Company stock. That Court thereupon decreed that this property be `hereby assigned to and vested in The Bush Foundation'. The Court file indicates that the Foundation did in fact receive this portion of the estate.
"Two factors in controversy appear patent in the District Court file. One is that Mrs. Bush wanted The Bush Foundation operated as she felt her husband may have wanted it to be run. Another is that the Estate of Archibald G. Bush has not been closed with any expeditiousness although she had been promised that it would be. Counsel on both sides in the present controversy have brought out that the combined properties of both Mr. and Mrs. Bush approximate a quarter of a billion dollars.
"The estate most certainly has been long in administration. Should it be necessary *494 for this matter to go to trial, one of the fact issues will be whether the delay has been in the actual administration or whether it has been caused by the quantity of litigation in which it has been embroiled.
"The instant District Court file further reveals a trust instrument dated September 8, 1967, between Mrs. Bush as grantor and David R. Roberts, H. Clifford Lee and Mrs. Bush herself as trustees setting aside a fund `to pay expenses, legal fees, and all other costs * * * of continuing, prosecuting and defending to a successful conclusion or settlement' of various proceedings and litigation `for the benefit of The Bush Foundation, the benefit of her late husband's estate plans and charitable purposes, and her own benefit or defense.' The instrument further suggests `the prosecution or defense of additional actions, lawsuits, appeals or other proceedings' in the future. The affidavit of Neil P. Convery attached to the copy of the trust instrument in the file states that the trust res consisted of shares of Minnesota Mining and Manufacturing Company stock having a present value of approximately $1,000,000.
"David R. Roberts is the identical name that appears as a witness to the Last Will and Testament of Archibald G. Bush and to the ratification and consent thereto by Edyth Bush.
"A lawsuit was commenced in Ramsey County District Court, the Complaint being dated January 11, 1968. (Edyth Bush, as a member, a director and chairman of the board of directors of The Bush Foundation; Clarence J. Bassler, Jr., as a member and a director of The Bush Foundation; and H. Clifford Lee, as a member and a director of The Bush Foundation, in their representative capacities aforementioned and on behalf of The Bush Foundation (a Minnesota non-profit corporation), Plaintiffs, vs. Herschel S. Arrowood, individually and as a co-executor under the last will and testament of Archibald G. Bush, deceased, and as a member, a director and treasurer of The Bush Foundation; Mary Jane Dickman, individually and as co-executor under the last will and testament of Archibald G. Bush, deceased; Cecil C. March, individually and as a member, a director and president of The Bush Foundation; Richard L. Post, individually and as a member, a director and secretary of The Bush Foundation; Honorable Edward J. Devitt, as a member and a director of The Bush Foundation; and Honorable Douglas M. Head, as Attorney General of the State of Minnesota, DefendantsRamsey County District Court File 356691.)
"The Complaint recited that Edyth Bush was the widow of Archibald G. Bush. It complained that the defendants, except Judge Devitt, who was a new A director, and the attorney general had combined in breach of their fiduciary duties to delay distribution to the Foundation; and that all claims had been paid and all estate and inheritance taxes and expenses of administration had been either paid or reserved for payment, and that the year period for probate (M.S. 524.47) had expired without obtaining an extension of time from the Probate Court. The Complaint set forth what plaintiffs regarded as efforts of the executors to thwart distribution to the Foundation and the fact that they had obtained from that Court an order that referred to the Foundation as `a contingent residuary legatee'. The matter, it indicated, had come before the directors to get rid of the word `contingent'. The B directors were unanimous that efforts be taken to eliminate the word. The A directors, other than Judge Devitt who was new to the board, voted unanimously against it, the Complaint stated; the A directors expressed doubt that the Foundation could take and indicated that subsequent events might make the Foundation unable to take. The A directors refused to appeal from the Probate Court orders, *495 and so Edyth Bush individually[3] and the B members did. The A directors other than Judge Devitt attacked the petition for partial distribution, according to the allegations.
"The file in that lawsuit is replete with motions and discovery, but the case ended first in a number of days of trial and then in settlement. Question had been raised as to the legality of having A and B directors. Now it was agreed:
"1. The Board would consist of 16 directors so long as Mrs. Bush lived. Thereafter there would be 15.
"2. She would be a lifetime director and chairman of the board. There would be a class of 3 Bush family directors, consisting initially of C. J. Bassler, Jr., H. Clifford Lee and one other to be designated by them subject to approval by the Attorney General.
"4. The other 12 would be Cecil C. March, Judge Devitt, Elmer L. Andersen, Reuel D. Harmon and 8 others to be selected.
"5. Terms would be 3 years.
"6. Other than Mrs. Bush, nobody would be eligible for election after age 70.
"7. The Foundation would adopt a by-law disqualifying later members for election affiliated with a corporation whose stock or securities constitutes 5% or more in value of the Foundation's portfolio.
"8. Vacancies other than in family directorships would be filled by a vote of not less than 8 directors at a duly-called meeting.
"9. A quorum to do business would be 9.
"10. A president shall not be eligible for re-election after serving for 3 years.
"11. The board would determine voting the shares in the portfolio.
"12. `There shall be no recovery of the $2,100,000 paid to Mrs. A. G. Bush in consideration of her execution of the Settlement Agreement and payment have been approved * * * by the Probate Court * * *.'
"15. `The Court may award the sum of $50,000 to the plaintiff "B" directors and the sum of $50,000 to the defendant "A" directors * * * as allowances for attorney fees, costs, disbursements and expenses in this litigation * * * and * * * the decree * * * shall provide that payment thereof constitutes satisfaction in full to the parties mentioned * * *.'
"20. `The executors agree to take prompt action * * * to procure entry of a final decree in the Probate Court assigning the residue of the estate of Archibald G. Bush to The Bush Foundation.'
"The stipulation of settlement, being dated September 17, 1969, was signed by obviously competent counsel as follows:
"For the plaintiffsMessrs. Oppenheimer, Hodgson, Brown, Wolff and Leach by Benno F. Wolff, Esquire, and David C. Donnelly, Esquire, of St. Paul, and Messrs. Lord, Bissell & Brook by Theodore C. Diller, Esquire, and Thomas P. Healy, Esquire.
"For defendants Devitt, March and PostMessrs. Altman, Geraghty, Leonard & Mulally by Richard J. Leonard, Esquire, and Sydney C. Berde, Esquire.
"For defendant, Elmer L. Andersen Richard J. Leonard, Esquire.
"For The Bush FoundationRichard J. Leonard, Esquire, and Benno F. Wolff, Esquire.
"For the defendants Arrowood and DickmanMessrs. Smith, Blomquist, Vitko & Rummel, by Bertrand Poritsky, Esquire, and Neil P. Convery, Esquire.
"For Douglas M. Head, the attorney generalRobert J. Christianson, Esquire, *496 Wright W. Brooks, Esquire, and John E. Harris, Esquire.
"The stipulation of settlement was to be approved by the Court within 40 days. However, problems apparently appeared; and on March 31, 1970, the District Court, upon request of counsel, agreed that the time for subsequent amendments to the stipulation would be extended to April 10, 1970.
"The stipulation was in fact approved by the Ramsey County District Court (Honorable Otis H. Godfrey, Jr., District Judge).
"It is observable at this point that the corporate arrangement for the board of directors which the stipulation arrived at differed from the structure with A and B directors which Mrs. Bush had wanted earlier. Taking the language of her Complaint in this action, she was suing as a director. Yet this was not an action by the Foundation, for neither she nor the other plaintiffs had corporate authority to bring the action. They were all suing as individuals to compel a certain result. They were not separate personalities, such as trustee or executor for instance, by which they could sue. Mrs. Bush, through her attorneys, agreed to the new board arrangement. She personally received benefit from the Court determination.
"Hearing was held in Probate Court in St. Paul on April 17, 1969, on a petition for a second partial decree of distribution. Appearances were practically the same as in the District Court case, except that there was a representative present for First Trust Company of St. Paul. The Probate Court on May 15, 1969, decreed the distribution of real and personal property to The Bush Foundation of the total value of $44,029,646.69. In connection with that hearing, attorneys for the executors of the Archibald G. Bush estate gave notice in writing to Edyth G. Bush that if that second partial distribution would be made to the Foundation, `such a transfer will reduce the amount of estate assets in the executor's hands to $36,395,677.06, and may impair your rights under Minnesota Statutes 525.16 and 525.212 if you should later decide to attempt to renounce Mr. Bush's will.' Notice of the filing of the second partial distribution decree and order was served upon Mrs. Bush personally on June 24, 1969.
"In connection with the notice to Edyth Bush and the second partial distribution, it is to be observed that Mrs. Bush apparently was advised as to the amount being distributed and what remained in the estate. She took no steps to repudiate the distribution and in fact acquiesced in it. Should a later renunciation be attempted and possibly accomplished by her, the Foundation would be obliged to return substantial amounts to the executors of the Archibald G. Bush estate in order for her to receive distribution of her widow's half.
"On April 27, 1970, executors of the estate petitioned the Court for permission to distribute to the Foundation a further or third partial distribution including cash in the amount of $1,712,610.35, `being the entire net income earned by said estate during the calendar year 1969'. The Probate Court on May 5, 1970, decreed this distribution to The Bush Foundation, and it was in fact so distributed. Notice of the filing of the decree was served on Edyth Bush personally at her Florida home on June 1, 1970.
"Intermediate accounts in the estate had been duly filed with the Court and allowed. There was subsequently filed in Probate Court the executors' petition for final account of October 15, 1971. The petition was dated November 23, 1971.
"On November 6, 1970, Edyth Bush had been declared incompetent by the County Judge's Court of Orange County, Florida. One group of individuals was declared guardian of her person. David R. Roberts and the Commercial Bank at Winter Park, Florida, were appointed guardians of her property.

*497 "On October 12, 1971, the co-guardians filed in the Probate Court of Ramsey County what was purported to be a renunciation on her behalf of the Will of Archibald G. Bush. David R. Roberts, one of the guardians, is the identical name that appeared as a witness to the Last Will and Testament of Mr. Bush and on the consent and ratification of the Will by Edyth Bush. This attempted renunciation was declared by the Honorable Andrew A. Glenn, Judge of Probate Court in Ramsey County, on March 1, 1972, to be of no force and effect; and Judge Glenn's order reiterated the position that the `said widow and her coguardians have no remaining interest in the estate.'
"This Probate Court determination has been appealed from in her behalf by the guardians. Meanwhile, and on November 20, 1972, Edyth Bush died. Probate of her estate has been commenced in Minnesota. The Ramsey County Probate Court file (134172) reveals a controversy as to whether she died a resident of Minnesota or of Florida.
"Action was commenced in the United States District Court, Minnesota, Third Division, by H. Clifford Lee, Clarence J. Bassler, Jr., and the Commercial Bank at Winter Park as co-executors of the Estate of Edyth Bush, Plaintiffs, vs. Herschel S. Arrowood, individually and as a co-executor, and as a former director of The Bush Foundation; Mary Jane Dickman, individually and as a co-executor * * *; Cecil C. March, individually and as a director * * *; Honorable Edward J. Devitt, individually and as a director * * *; Richard L. Post, individually and as a former director * * *; Reuel D. Harmon, individually and as a director * * *; The Bush Foundation * * *, Defendants, (Court File No. 3-72 Civil 98).
"That case involved much of the same disputed claims that were being made in the State courts. The Federal Court concluded in an 81 page opinion that it had jurisdiction over the subject matter. But it added that, without regard to the issue of res judicata, it should abstain from assuming jurisdiction where the Probate Court had previously handled the matter and `has jurisdiction for enforcement.' The Federal Court added that `the plaintiff should not now here be permitted to re-litigate the issues which have heretofore been litigated in the prior actions.'
"That Court then, however, concluded that `this cause should be dismissed on the ground of res judicata, collateral estoppel and abstention.' It added:
`This Court does not reach the question of laches; however, it is pertinent for this Court to point out that there was a delay from 1966, when the action allegedly arose, until 1971 before any affirmative action was taken on the question of breach of the original agreement. This indeed is a lengthy, if not totally fatal delay.'
"One of the issues in our instant case is whether Mrs. Bush did not wait too long to file her attempted renunciation of the Will of Mr. Bush. Her guardians argue that she did not. The executors, they argue in effect, had misled her by purporting to stipulate a settlement, but that after it would normally be too late for her to renounce the Will, the stipulation was breached; the executors and A directors said the division of A and B directors was illegal and the executors did not proceed diligently to close the estate.
"It became the conclusion of respondents, except the attorney general and Judge Devitt, that a corporate arrangement for A and B directors on a bicameral basis was illegal under the Minnesota nonprofit corporation statute. M.S. 317.20, Subd. 1, does not in fact provide for a bicameral directorship. It states simply:
`A board of at least three directors shall manage the business of the corporation.'
"The Court does not attempt here to rule on whether a bicameral directorship *498 is legal. At least, by stipulation of counsel and approval by the District Court, a single directorship with Mrs. Bush as chairman was adopted as part of the settlement agreement.
"The propositions of law and fact filed by the executors of Mrs. Bush's estate include in effect the following: Within six months after commencement of probate, Mrs. Bush indicated her intention to renounce the Will. On August 27, 1966, to prevent her from renouncing it, an agreement of settlement was entered into. The Foundation amended its articles and by-laws to provide for a bicameral directorship. The Foundation agreed to be operated as it had been before Mr. Bush died in the manner whereby the advice and counsel of Mr. Bush had been sought before he died, `so that The Bush Foundation would be operated in the manner and for the purposes intended by Mr. and Mrs. Bush.'
"The propositions state that the executors proceeded to breach the stipulation so that there was no consideration for it; the stipulation for reorganization was entered into by her attorneys without her authority and she would not have consented to it. The propositions further indicated that she was defrauded into joining in the stipulation.
"The Bush Foundation agrees that Mrs. Bush waited too long to renounce the Will and also that the right of renunciation died with her. It joins with the arguments in behalf of the executors and the attorney general who seek summary judgment in their favor.
"M.S. 525.212 states:
`* * * such spouse shall be deemed to have elected to take under the will, unless he shall have filed an instrument in writing renouncing and refusing to accept the provisions of such will within six months after the filing of the certificate of probate. For good cause shown, the court may permit an election within such further time as the court may determine * * *.'
"The Probate Court did not permit a renunciation after the six months had passed. If the appeal to this Court is proper, it would seem that it is a fact question for trial as to whether good cause for extension of time has been shown. Good cause was not shown at least as of the time Mrs. Bush's attempted renunciation was filed."
While the case seems quite complicated and much legal argument has been presented to us, it really involves a determination of two issues: (1) May the district court on appeal from an order of the probate court grant summary judgment? (2) Is the decision of the Honorable Otis H. Godfrey, Jr., referred to in the above statement of facts, res judicata of the issues plaintiffs now seek to try? Hereinafter, the opinion of Judge Godfrey will be referred to as the Godfrey decision.
The procedure upon an appeal to the district court from an order of the probate court is found in Minn.St. 525.72, which reads:
"Within 20 days after perfection of the appeal, the appellant shall file with the clerk of the district court, and serve upon the adverse party or his attorney a clear and concise statement of the proposition, both of law and of fact, upon which he will rely for reversal of the order, judgment, or decree appealed from; within 20 days after such service the adverse party may serve and file his answer thereto and the appellant, within 20 days thereafter, may serve and file a reply. If there be no reply, allegations of new matter in the answer shall be deemed denied. Demurrers shall not be permitted. The district court may allow or require any pleading to be amended, grant judgment on the pleadings, or, if the appellant fail to comply with the provisions hereof, dismiss the appeal.

"After issues are so formed, the case may be brought on for trial by either party by the filing and service upon the *499 attorney for the adverse party, or if he have none, then upon the clerk for him, of a notice of trial or note of issue, in accordance with the practice in the district court. Thereupon the cause shall be placed upon the calendar, tried, and determined in the same manner as if originally commenced in that court. All appeals other than those from the allowance or disallowance of a claim shall be tried by the court without a jury, unless the court orders the whole issue, or some specific question of fact involved therein, to be tried by a jury or referred." (Italics supplied.)
Appellants, who are the executors of Mrs. Bush's estate, contend that under this statutory provision, while the district court may grant judgment on the pleadings, it may not grant summary judgment.
We think it best to first dispose of the question of whether the judgment entered pursuant to the Godfrey decision is res judicata so that, if it is, the question of whether the district court had the right to grant summary judgment may be considered in light of the fact that litigation of all the fact issues appellants now seek to litigate in this case is barred by the res judicata effect of the Godfrey judgment. It seems to be the contention of appellants that they have a right to a trial de novo on these issues even if the Godfrey decision is found to be res judicata and a bar to litigation of such issues.
Essentially, it is the contention of appellants that the Godfrey decision is not res judicata because (1) Mrs. Bush appeared in the action leading to the Godfrey judgment in her representative capacity as a director of The Bush Foundation and not in her individual capacity; (2) the requisite identity of causes of action between the case culminating in the Godfrey judgment and the case now before us is absent; and (3) the stipulation on which the consent judgment entered by Judge Godfrey was based was made by Mrs. Bush's counsel without her knowledge and without her authority. Each of these arguments can probably be considered separately.
Appellants state that the identity of parties in the two actions is lacking because in the one case resulting in the Godfrey decision Mrs. Bush appeared in her representative capacity and in this case she, through her representatives, appears in her individual capacity. The general test is whether the named party is the real party in interest or a mere nominal party. See, Olson v. Linster, 259 Minn. 189, 107 N.W.2d 49 (1960); Schmitt v. Emery, 215 Minn. 288, 9 N.W.2d 777 (1943); Bamka v. Chicago, St. P., M. & O. R. Co., 61 Minn. 549, 63 N.W. 1116 (1895). On the question involving the identity of the parties, the trial court held:
"* * * Taking the language of her Complaint * * *, she [Mrs. Bush] was suing as a director. Yet this was not an action by the Foundation, for neither she nor the other plaintiffs had corporate authority to bring the action. They were all suing as individuals to compel a certain result. They were not separate personalities, such as trustee or executor for instance, by which they could sue. Mrs. Bush, through her attorneys, agreed to the new board arrangement. She personally received benefit from the Court determination."
It should also be mentioned that in the action involving the Godfrey decision, the attorney general was named as a defendant in the complaint, and, pursuant to Minn.St. 501.12, interposed a counterclaim and cross-claim in behalf of the public in which he alleged that both Class A and Class B directors were in breach of their fiduciary duties. He also alleged that, except for the amount allocable to maintenance of the Bush home in Florida, Mrs. Bush should disgorge the $2,100,000 she had received as part of the prior settlement. Whether this counterclaim was permissible under Rules of Civil Procedure, Rules 13.01 and 13.02, which require that a counterclaim be made against any "opposing party," we need not determine. Mrs. Bush answered this counterclaim *500 in her personal capacity without seeking dismissal of it.
It is also abundantly clear that the stipulation of settlement upon which the Godfrey decision was based determined Mrs. Bush's personal rights as well as any she might have in a representative capacity. It was agreed, among other things, that she could retain the payment of $2,100,000; and the dispute over the two classes of directors also involved her personal rights. She also agreed to waive any right to renounce her husband's will.
Much could be said about the distinction between the doctrine of estoppel by judgment and collateral estoppel, but it would seem that in this case, no matter what basis we put it on, Mrs. Bush has agreed to a consent judgment which has been entered by a court having jurisdiction over the cause of action; that no appeal has been taken from that judgment; and that it still stands as a valid judgment. So, it must be held to be binding on the issues actually settled in that litigation. Whether it be through an estoppel by judgment or a collateral estoppel, the consent judgment is binding upon her. With respect to the consent judgment, we said in the case of Pangalos v. Halpern, 247 Minn. 80, 84, 76 N.W.2d 702, 706 (1956):
"* * * [A]n order made upon the application, or with the consent, of all the interested parties is not ex parte. The fact that such an order is made upon an agreed statement of the facts or is entered by consent or upon the agreement of the parties does not lessen its force or effect, and it is as binding upon the parties as if made after protracted litigation."
In the case of In re Application of Schaefer to Register Title, 287 Minn. 490, 493, 178 N.W.2d 907, 910 (1970), we quoted with approval the following from the Pangalos case (247 Minn. 85, 76 N.W.2d 706):
"* * * In the absence of fraud, a valid judgment, decree, or as here an order which is the equivalent thereof, entered by agreement or consent, operates as res judicata to the same extent as if it had been rendered after contest and full hearing and is binding and conclusive upon the parties and those in privity with them."
Had the case upon which the Godfrey judgment is based been tried and determined instead of disposed of by settlement, we doubt anyone would contend that the facts litigated therein were not res judicata. The stipulation went further than a trial in that the individual rights of Mrs. Bush were disposed of as well as her rights in a representative capacity. Had she tried these issues by consent, even though they were probably not included in the original pleadings, she would likewise be bound by the result.
It might be mentioned in passing that the case of Bush v. Arrowood, 293 Minn. 243, 198 N.W.2d 263 (1972), was determined by this court some time ago. In that case the issue directly involved was the right of attorneys retained by the attorney general to be paid their fees out of foundation funds. In our decision in that case, we said in referring to the case upon which the Godfrey judgment was based:
"* * * Due in a large part to the services performed by these attorneys, a stipulation of settlement was finally arrived at, and, on April 10, 1970, a judgment was entered in district court which disposed of the right of the widow to renounce the will of Mr. Bush, provided a workable board of directors for the foundation, and in many other respects provided an orderly and competent means of controlling and managing The Bush Foundation. None of the parties affected by that judgment appealed, and the res judicata effect of that judgment obviously is a substantial benefit to the foundation." 293 Minn. 246, 198 N.W.2d 265.
While Bush v. Arrowood, supra, is not discussed in appellants' original brief, in their reply brief we find the following:

*501 "The Bush Foundation argues (pp. 39-40) that this Court has already said (in Bush v. Arrowood, 293 Minn. 243, 198 N.W.2d 263): `The res judicata effect of the Judgment and Decree [in the state court suit] cannot be disputed * * *.' This Court did not so hold. There the Attorney General sought recovery from the Foundation of attorneys' fees for his special counsel in the Bush v. Arrowood proceeding. The District Court held the Attorney General was entitled to recover; this Court held he was not. That was the only question before this Court. This Court said: `The only question on this appeal is the validity of the court's order directing the foundation to pay a portion of these attorneys' fees.'"
Appellants apparently contend that what we said in Bush v. Arrowood, and quoted above, is dictum and therefore not binding upon the court at this time.
It may be true that what we said in the former Bush case was dictum, but if it was, it at least was a strong indication of this court's belief at that time that the Godfrey judgment was res judicata. As a matter of fact, the stipulation and the Godfrey judgment were involved in a determination of the amount of fees the attorneys were entitled to recover if they were entitled to recover from the foundation at all. So, the question was at least directly involved in that case. The court had hopes at that time that by indicating our belief that the Godfrey judgment was res judicata it would end this protracted litigation. Apparently our hopes were not realized. Even dictum, if it contains an expression of the opinion of the court, is entitled to considerable weight. We now hold that the judgment of the district court which decided the very questions appellants now seek to raise and litigate in this action is res judicata and bars any future litigation of these same issues.
In the case of State v. Rainer, 258 Minn. 168, 177, 103 N.W.2d 389, 395 (1960), we said:
"It seems clearly apparent that the statement and the reasoning in [State v. Lund, 174 Minn. 194, 218 N.W. 887 (1928)], even though this court in [State v. Nobles, 234 Minn. 38, 47 N.W.2d 473 (1951)] referred to it as merely dictum, was an expression of opinion on a question directly involved and argued by counsel though not entirely necessary to the decision. The expression of the court, under such circumstances, qualifies as judicial dictum and as such is entitled to much greater weight than mere obiter dictum and should not be lightly disregarded."
We quoted (258 Minn. 178, 103 N.W.2d 396) from the opinion of Judge Donovan of the United States District Court in the case of Goodson v. United States, 151 F.Supp. 416, 420 (D.Minn.1957), the following:
"In ascertaining the Minnesota law on this question the federal court is not bound by dicta. * * * Yet while dicta are not conclusive evidence of the law of any state, considered dicta, as distinguished from mere obiter dicta, should not be ignored, * * * and are even entitled to great weight." (Italics supplied.)
We, therefore, agree with the trial court that, when consideration is given to the stipulation of all the parties and the final disposition of the case and entry of judgment by Judge Godfrey, there is sufficient identity of the parties to meet the test of res judicata. We also hold that there is sufficient identity of causes of action. As a matter of fact, the same causes of action were involved in both cases and once the identity of the parties is established, the causes of action also become identical. Essentially, determination of whether the causes of action are the same depends to some extent on whether Mrs. Bush appealed in her individual capacity. It seems clear that she did.
The only other contention that merits discussion is the claim now made that *502 Mrs. Bush did not authorize or consent to the settlement upon which the Godfrey judgment was based. We need not spend time on that issue. That she was represented by competent counsel must be conceded. That she knew what she was doing must likewise be conceded.
On a motion for summary judgment we have held on many occasions that a party opposing such motion must do something more than simply rely upon the pleadings. Here there is nothing submitted, by form of affidavit or otherwise except mere conclusionary opinion, to show that the settlement was not made with Mrs. Bush's full consent. Rosvall v. Provost, 279 Minn. 119, 155 N.W.2d 900 (1968); Ahlm v. Rooney, 274 Minn. 259, 143 N.W.2d 65 (1966). It is also evident that Mrs. Bush was kept apprised of what was being done and of the action taken in her behalf by her attorneys. Whether or not she consented to the stipulation is a question of fact. The Godfrey court having determined that issue adversely to her, and no appeal having ever been taken from that determination, she is clearly now bound by it.
We then come to the question of whether the district court on appeal from an order of the probate court may grant summary judgment. This, in turn, revolves around the proper interpretation of the language in Minn.St. 525.72, where we find the following:
"* * * Thereupon the cause shall be placed upon the calendar, tried, and determined in the same manner as if originally commenced in that court."
The crux of appellants' argument relates to the proper interpretation of Rule 81, Rules of Civil Procedure. Apparently it is the contention of appellants that since Minn.St. 525.72 does not expressly authorize the district court to entertain a motion for summary judgment on appeal from the probate court, its power to do so, if any, must be derived from Rule 56, Rules of Civil Procedure, which authorizes a district court in the exercise of its trial jurisdiction to order summary judgment, but that Rule 81.02 prohibits recourse to Rule 56. Rule 81.02 provides that the Rules of Civil Procedure "do not supersede the provisions of statutes relating to appeals to the district courts."
While much could be said in disposing of this contention, we think it sufficient to refer to the case of Nationwide Corp. v. Northwestern National Life Ins. Co., 251 Minn. 255, 87 N.W.2d 671 (1958). We there held that the Rules of Civil Procedure would apply to a mandamus proceeding where the relevant statute, Minn.St. 586.08, provided that "proceedings [shall be] had, in the same manner as in a civil action." We held this language sufficient to invoke Rule 81.03, which states that "[w]here any statute * * * provides that any act in a civil proceeding shall be done in the manner provided by law, such act shall be done in accordance with these rules." In so holding, we attempted to outline a definite test for determining the applicability of the rules to a particular statute. We said:
"* * * Where a statute governing a civil proceeding, not superseded by our rules of civil procedure, provides that the proceeding shall be conducted in the same manner as a civil action or uses other language of like import, the statute adopts the procedure of the rules by reference in the absence of a specific provision in the statute itself inconsistent with the rules." 251 Minn. 266, 87 N.W.2d 680.
Appellants argue in substance that Minn.St. 525.72 does not state that the proceedings shall be conducted in the same manner as a civil action but merely that they shall be "tried, and determined" in the same manner as a civil action. Thus, they argue, Rule 81.03 does not operate to incorporate by reference into Minn.St. 525.72 any of the Rules of Civil Procedure which govern pretrial proceedings. We think this argument is simply a play upon words. The words "tried, and determined in the same manner as if originally commenced in that court" must include the right to dispose of the case the same as if it had been commenced in *503 the district court. We think this carries with it the right to grant summary judgment where there are no issues of fact to be tried or where the law bars litigation of such issues.
A motion for summary judgment calls for a determination of the issues of law when there are no material fact issues to be tried and results in a decision on the merits. In the authors' comment to Rule 56, Hetland and Adamson point out:
"Rule 56 is a device designed to implement the stated purpose of the rules to secure a just, speedy and inexpensive determination of any action. A summary judgment permits the court to make a prompt disposition of an action on the merits if there is no genuine dispute regarding the material facts, and a party is entitled to judgment under the law applicable to such established facts." 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., p. 563.
Appellants argue in substance that one of the elements of the Nationwide test is absent in the instant case because Rule 56 is inconsistent with the provisions of Minn.St. 525.72. First, they argue, that Minn.St. 525.72 grants a substantive right to a trial de novo while Rule 56 permits summary dismissal with no trial at all. They argue in fact that in a trial de novo a court should have no power to cut short the proceeding except by granting judgment on the pleadings. In the case of Grier v. Estate of Grier, 252 Minn. 143, 145, 89 N.W.2d 398, 401 (1958), we rejected the contention that the district court's granting of judgment on the pleadings denied appellants the right to a trial de novo, stating:
"* * * Whether it be in an action initially commenced in the district court or in a proceeding brought to that court as a de novo matter by appeal from the probate court, an adversary's motion for judgment on the pleadings is properly granted if, as a matter of law, the appellant is entitled to no relief on the pleadings. Where the pleadings do not warrant the granting of any relief, there is no purpose in conducting a de novo trial on the merits."
The same would seem to be true of a motion for summary judgment. If there are no fact issues that can be litigated due to the bar of res judicata in the former action, it would make little sense to require a trial de novo. To construe the statute involved as permitting a motion for judgment on the pleadings while forbidding a motion for summary judgment where there are no fact issues to be tried would simply be reviving the technicalities which the Rules of Civil Procedure seek to avoid and which were condemned by this court in House v. Hanson, 245 Minn. 466, 72 N.W.2d 874 (1955).
In view of our determination that the decision in the Godfrey judgment is res judicata as to all the issues appellants seek to litigate, we need not decide whether estoppel or waiver also bars the litigation of these issues. If they are barred by res judicata, that ends the matter. We think that is the case here.
It is difficult to understand what appellants expect to accomplish by this litigation. The estate has now been largely, if not wholly, distributed according to the wishes of both Mr. and Mrs. Bush. If Mrs. Bush's right to have some control over the operation of the Foundation had any value during her life, that right has now vanished by virtue of her death. She no longer could have any voice in controlling the affairs of the Foundation and it seems to us that these claims are now moot.
Inasmuch as we hold that the Godfrey decision was res judicata of all of the issues appellants seek now to try, it must follow that the summary judgment of the court must be, and is, affirmed.
Affirmed.
SHERAN, C. J., and OTIS, J., took no part in the consideration or decision of this case.
NOTES
[*] Retired Chief Justice acting pursuant to Minn.St. 2.724.
[1] Ancillary proceedings were pending in Florida.
[2] Italics supplied.
[3] Italics supplied.