## STATE v. EUGENE RAINER.

103 N. W. (2d) 389.

May 27, 1960—No. 37,837.

*William E. Crowder,* for appellant.

*Miles Lord,* Attorney General, *Henry H. Feikema,* Special Assistant Attorney General, and *William R. Weiss,* County Attorney, for respondent.

NELSON, JUSTICE.

Defendant, Eugene Rainer, entered a plea of guilty to the charge of kidnapping and was adjudged guilty and sentenced by the district court. He now appeals from an order denying a new trial.

In an affidavit made a part of the record on the motion for a new trial, defendant claims the true circumstances are that on the night of December 7, 1957, he was in a cafe in St. James talking to the owner of

the cafe, Mrs. Sally Bodin; that during the conversation he told her that he was going to Mississippi to see his brother. Phyliss Rathman and her two brothers were in the cafe and overheard the conversation. They came over to defendant and asked him if he would let them ride along as far as Memphis, Tennessee. Violet Wiederoff, Sarah Burton, and Phyliss Rathman's boy friend were also in the cafe at the time, heard the conversation, and asked defendant if they could ride along with him. Defendant inquired of Phyliss Rathman, who was 18 years of age, what her parents would say about this, to which inquiry she replied that she was certain it would be all right with them; that she would take full responsibility for the care of her brothers, the younger being James Rathman, a minor under the age of 16 and alleged to be the subject of the kidnapping.

Phyliss Rathman and her two brothers, who had also asked permission to ride along, left with defendant, in his auto, for Tennessee, the auto being driven by Phyliss Rathman's oldest brother. Several stops were made on the way for meals. All of the passengers except defendant and Violet Wiederoff left the car at Memphis, Tennessee. They sought no further passage with defendant and he never saw them again during the trip. The defendant and Violet Wiederoff then proceeded on to Popularville, Mississippi, where both stayed 2 days with defendant's brother. They then went to New Orleans to visit another brother of defendant and stayed overnight. They returned to Popularville, Mississippi, where defendant went to work for one Bob Stanford for a 3-week period. He was picked up by local officials and held on a kidnapping charge for one week, after which he was released by the local sheriff after communication with the sheriff in Minnesota.

Defendant came back to Mankato, Minnesota, on January 20, 1958, and went to work for a farmer, Bill Gatler. He soon learned that the sheriff was looking for him and went to see the sheriff, which resulted in his being jailed on the kidnapping charge.

Defendant stated that at no time did he force anyone to go with him; that he at first refused to permit the persons to ride along with him as requested by them. Defendant further states that, during the trip, any one of the persons who had sought to ride along as passengers

could have left his automobile of his own free will; that at no time did he force or threaten anyone, in any manner whatsoever, or insist upon their continuing the trip with him; that each and every passenger was free to leave the party at any time; and that no one was forced to accompany him, nor did he attempt to exercise any influence over any of them either to leave or to abandon the trip, or to cause them to continue the trip after leaving St. James.

It appears that one girl among the passengers wanted to visit a brother who was in the service, stationed in the South, and that another had a boy friend in the South whom she wanted to see. James Rathman, who it is claimed is under the age of 16, continued in the company of his sister, Phyliss, and his older brother during the entire trip until they left the defendant at Memphis, Tennessee.

Another affidavit disclosed that William E. Crowder, counsel for defendant, went to the home of the Rathmans on or about December 23, 1958, for the purposes of investigation and talked with the members of the family, including James Rathman's mother; that James Rathman stated in Crowder's presence that defendant had not kidnapped any of them; that they went voluntarily with him as one of the girls wanted to visit the brother who was in the service stationed in the South and the other to visit a boy friend also in the South; and that during the trip they were free to leave at any time they wanted. Crowder further states that the mother was belligerent during his visit and stated in substance that she would let none of her children give a statement as she wanted to see the defendant stay in jail regardless of whether he was guilty of kidnapping, technically, or not, and that she thereupon ordered Crowder from her home; that this was stated while conducting an interview with Violet Wiederoff; that none of said persons have given a statement to Crowder although requested. James Rathman, the younger of the two Rathman boys who went on the trip, stated that he would meet Crowder and give his statement on a later date, but Crowder has not been able to locate him.

The foregoing affidavits of defendant and William E. Crowder, his counsel, accompanied a notice of motion to withdraw his plea and plead not guilty based upon the following grounds:

"1.   That defendant is not guilty of the charge herein but that he pleaded guilty to said charge upon a mistaken conception of the law as applied to the facts; that he entered said plea of guilty under a mistaken apprehension and understanding that he would be given a two-year probationary period, and that although he was not guilty of the crime charged he entered said plea for the purpose of avoiding expense of trial and with the understanding, although mistaken, that he would not be imprisoned or sentenced to a long prison term and would be permitted to remain with his family and provide the care and support for them.

"2.   That said plea was entered upon excusable neglect and mistake and without defendant knowing and being fully apprized of and cognizant of his rights under the laws and statutes.

"3.   That newly discovered evidence which defendant and his counsel now have clearly indicate he is not guilty of the crime charged and that if said matter is tried a jury could reach no other conclusion that defendant is not guilty, and that the results would in opinion of defendant be different than they now are.

"4.   That defendant has been advised by counsel that he has a good and meritorious defense to the charge herein and that he desires to have said matter heard by a Court and jury all as made and provided by the laws and statutes of the State of Minnesota.

"5.   That defendant is a person of little education or experience and did not fully appreciate and know of his rights under the law and that his plea herein has deprived him of his constitutional rights and that he should be permitted to withdraw said plea and enter a plea of not guilty."

Defendant thereafter was permitted to include a motion for a new trial by amendment and both motions were denied.

When defendant first appeared before the district court on April 21, 1958, one Willard B. Crowley was appointed by the court as counsel for the defendant and the following proceedings were had:

"*  *  * Your name is Eugene Rainer?

"Defendant: Yes.

*     *     *     *     *

"Q. What is your age?

"A. Thirty-three.

"Q. Your address?

"A. General Delivery, Mankato.

"Q. Do you have a family?

"A. Me and the wife are separated.

"Q. Are you divorced?

"A. No, sir.

"Q. Where does she live?

"A. 208 North Fifth Street, Mankato.

"Court: Would the County Attorney read the Information?

\*    \*    \*    \*    \*

"Court: Mr. Rainer, you heard the County Attorney read the Information charging you with the crime of kidnapping, as having been committed by you on December 7th, 1957, here at St. James. At the present time it is necessary for you to make a plea of guilty or not guilty to this charge. Do you understand the consequences of a plea of guilty if you did make it?

"A. Yes.

"Q. Do you understand that you may be sentenced to a state institution?

"A. Yes.

"Q. Have you discussed this with your attorney?

"A. Yes.

"Q. You realize what might happen to you?

"A. Yes.

"Court: Counsel, Mr. Crowley, do you feel the defendant is fully aware of the possible consequences there might be?

"Mr. Crowley: Your Honor, I discussed this case thoroughly with him; I quoted the statute. I believe he is fully aware of the effect of entering a plea of guilty.

"Court: Are you ready at this time, Mr. Rainer, to make a plea to this charge?

"A. Yes."

The court then stated to him the charge contained in the information and inquired: "To this Information how do you desire to plead, guilty or not guilty?" Defendant answered, "Guilty."

"Court: Defendant's plea of guilty may be entered. Defendant is remanded to the custody of the sheriff to await pre-sentence investigation * * * and upon the completion of the report and furnishing the same to the court the defendant will be returned to the court for sentence."

When defendant next appeared before the court on July 8, 1958, a parole agent's report had been furnished to the court, and on the motion of the county attorney the court entered its order appointing E. M. Perrier as additional counsel for defendant. The proceedings then were concluded as follows:

"Q. When you were arraigned before the court on April 21st, 1958, at St. James, you made a plea of guilty to the Information of the County Attorney charging you with kidnapping. At that time the court asked you if you understood the consequences of a plea of guilty to the charge. At that time you indicated that you did so understand what might happen to you. The court would like to ask you at this time, before sentence is imposed, if you understand what might be the possible consequences to you by virtue of this plea of guilty?

"A. The only thing I can say is I understand everything.

"Q. You understand?

"A. That's right.

"Court: Mr. Crowley, you appeared as counsel for the defendant at St. James. You have had an opportunity to discuss the matter with Mr. Rainer since then, have you?

"Mr. Crowley: Yes, your Honor, I discussed the matter with Mr. Rainer at St. James on two occasions quite at some length. I drove to Mankato on an occasion about a month ago and discussed it thoroughly for about an hour with him. I also discussed the case with him today for about half an hour; I went over the whole matter and explained to him what the consequences of a plea of guilty might be. It is my opinion that he is fully cognizant of a plea of guilty and the consequences of such a plea.

"Court: Mr. Perrier, you have had an opportunity, according to the record, to counsel with the defendant.

"Mr. Perrier: Yes, your Honor, I discussed the case with him today for 15 or 20 minutes; I went over the features of the case with him; I discussed his version of the case with him; I discussed the law with him, the statutes, and the elements of the crime. I also had an opportunity to review the file of Mr. Crowley and also had an opportunity to see some of the affidavits involved in this matter. I believe that Mr. Rainer understands the situation and I believe that I made a complete explanation to the best of my ability to him.

"Court: Mr. Rainer, before sentence is imposed do you feel that both counsel with whom you have discussed the case today have portrayed the facts as you believe them to be, and are you satisfied with the representation of these two attorneys?

"A.   Yes, I am satisfied.

"Q.   Are you willing at this time to receive your sentence?

"A.   Yes.

      \*    \*    \*    \*    \*

"Q.   Do you have a family living at that address?

"A.   Yes, I have a family, my wife and child. We have been separated for a while. We got back together."

The court thereupon sentenced the defendant to be committed to the state penitentiary at Stillwater for a term of not less than 5 nor more than 40 years. While there is reference in the record to prior convictions, no information charging defendant with the commission of prior felonies was filed.

The court attached a memorandum to his amended order denying defendant's motions wherein he stated in part:

"I was impressed with the remarks of an attorney who happened to be in the court room at the time of hearing on the motion, and who asked if he might be heard. Mr. C. A. Gus Johnson II had represented the defendant in a civil matter, and stated that from his conversations with defendant at about the time of the pending charge herein, he felt defendant did not fully understand the implications of a plea of guilty to the crime charged."

There was ample time for investigation by court-appointed counsel during the interim between April 21 and July 8, the date of sentencing. There is nothing in the record to indicate that defense counsel made available any of the facts or circumstances surrounding the alleged kidnapping that a thorough investigation might not have disclosed since it appears that all the participants on the trip involved had returned to the community. Since a plea of guilty had been entered, there ought to have been made available to the trial court the results of such investigation if the court in its discretion should deem it necessary before pronouncement of sentence. It seems appropriate to suggest that the duties and the responsibilities of court-appointed counsel acting for the defense in a criminal case should not differ in degree from the duties and responsibilities undertaken by defense counsel who may be selected by the defendant himself, even though the latter situation may suggest the promise of a better return for the services rendered. There may be instances where there is no pressing necessity of instigating an investigative process because of circumstances and facts available, but apparently this was not such a case. A complete and thorough investigation of the facts here would have been of great assistance to the trial court in determining its course with regard to accepting a plea of guilty or either permitting or ordering the defendant to stand trial.

No issue having been raised by the state as to the truth of the affidavits by counteraffidavits or otherwise, this court may well take the sworn statements of the defendant and his present counsel to be true and proceed upon the theory that justification exists for the consideration of newly discovered evidence. Such newly discovered evidence may be classed as something extraneous to the action of the court, evidence aliunde, or from another source than that before the court when the proceedings were had below.

While examination of a person convicted of an offense before sentence is authorized by M. S. A. 631.20, where the extent of the punishment lies in the discretion of the court, upon the suggestion of either party, or upon the court's own determination, the record in the instant case suggests that such procedure was not followed and that the information contained in the supporting affidavits, if true, was not therefore discovered or made available to the court.

The matter of an examination of a convicted person before sentencing was before this court in State v. Larson, 171 Minn. 246, 248, 213 N. W. 900, 901, where the court said:

"* * * A trial judge, about to sentence a man convicted of a criminal offense, may properly invite him to make a statement before sentence is pronounced and may question him about his life in the past. That is the usual practice."[1]

The record does not indicate to what extent the grounds of arrest were made known to the defendant pursuant to the requirements of §§ 611.01 or 611.033.[2]

We are not unmindful of the position taken by the state that no relief can be granted because defendant's motion to permit him to withdraw his guilty plea, while originally made December 23, 1958, before the expiration of the time to appeal on January 8, 1959, was not amended to include a motion for a new trial and was not heard until after the period had expired on January 17, 1959.

It is true that in State v. Lund, 174 Minn. 194, 218 N. W. 887, and in State v. Nobles, 234 Minn. 38, 47 N. W. (2d) 473, it was held, based upon the particular facts in those cases, that the trial court was without authority to hear the motions after the 6-month period to appeal from the judgment had expired. While Commissioner Olsen of this court in the Lund case so held, we note that he also stated (174 Minn. 196, 218 N. W. 888):

"Cases may arise, *when a motion for a new trial is made on the ground of newly discovered evidence, or for other cause,* where the

---

[1]See, 22 Minn. L. Rev. 734; Annotation, 113 A. L. R. 829.

[2]See Thompson v. City of Louisville, 362 U. S. 199, 206, 80 S. Ct. 624, 629, 4 L. ed. (2d) 654, 659, wherein it was held that: "* * * we find no evidence whatever in the record to support these convictions. Just as 'Conviction upon a charge not made would be sheer denial of due process,' so is it a violation of due process to convict and punish a man without evidence of his guilt." See State v. Croatt, 227 Minn. 185, 193, 34 N. W. (2d) 716, 721, wherein this court held that: "The gist of kidnapping is the intentional taking a person and compelling him to be detained against his will."

defendant may show himself entitled to relief by way of motion for a new trial after the expiration of the time to appeal from the judgment; *but this is not such a case."* (Italics supplied.)

The court in its per curiam opinion in the Nobles case quotes the foregoing statement and then comments that (234 Minn. 41, 47 N. W. [2d] 475):

"* * * Neither do we consider the case at bar such a case. There is nothing here in connection with defendant's motion for a new trial that indicates either newly discovered evidence or any other cause which might show defendant entitled to relief by way of a motion for a new trial after the expiration of the time to appeal from the judgment. * * * Furthermore, the court's reference in the Lund case to cases which might arise where the defendant might show himself entitled to relief after the expiration of the time to appeal from the judgment was merely dictum and is not controlling in the case at bar."[3]

An examination of the briefs and the record in the Lund case indicates that the motion for a new trial was urged largely upon the ground of insufficiency of the evidence. Because the case had not been heard within the time given to appeal, the court denied relief to the appellant because the issue of newly discovered evidence or other cause was not present.

It seems clearly apparent that the statement and the reasoning in the Lund case, even though this court in the Nobles case referred to it as merely dictum, was an expression of opinion on a question directly involved and argued by counsel though not entirely necessary to the decision. The expression of the court, under such circumstances, qualifies as judicial dictum and as such is entitled to much greater weight than mere obiter dictum and should not be lightly disregarded. In re Chadwick's Will, 80 N. J. Eq. 168, 82 A. 918; Crescent Ring Co. v. Trav-

---

[3]"* * * Judgments may be vacated on motion where the ground therefor is something extraneous to the action of the court. Gasser v. Spalding, 164 Minn. 443, 205 N. W. 374; 3 Dunnell, Dig. & Supp. § 5120; Black, Judgments (2 ed.) § 329." Gelin v. Hollister, 222 Minn. 339, 350, 24 N. W. (2d) 496, 502, 168 A. L. R. 195, 203.

elers Ind. Co. 102 N. J. L. 85, 132 A. 106. Thus, there is a distinction between "obiter dictum" and "judicial dictum," the latter constituting an expression emanating from the judicial conscience and the responsibilities that go with it.

Judge Donovan of the United States District Court in the recent case of Goodson v. United States (D. Minn.) 151 F. Supp. 416, refers to dictum appearing in In re Estate of Gelin, 229 Minn. 516, 40 N. W. (2d) 342, and another dictum to the same effect repeated in First Nat. Bank v. First Trust Co. 242 Minn. 226, 64 N. W. (2d) 524, and concludes that it had been strengthened and acquired additional weight by reason of such recognition and repetition, saying also (151 F. Supp. 420):

"In ascertaining the Minnesota law on this question the federal court is not bound by dicta. * * * Yet while dicta are not conclusive evidence of the law of any state, *considered dicta,* as distinguished from mere obiter dicta, *should not be ignored,* * * * and are even entitled to great weight." (Italics supplied.) Citing, Badger v. Hoidale (8 Cir.) 88 F. (2d) 208, 109 A. L. R. 798; Yoder v. Nu-Enamel Corp. (8 Cir.) 117 F. (2d) 488; Blue Valley Creamery Co. v. Consolidated Products Co. (8 Cir.) 81 F. (2d) 182; National Bank of Oxford v. Whitman (S. D. N. Y.) 76 F. 697; Hawks v. Hamill, 288 U. S. 52, 53 S. Ct. 240, 77 L. ed. 610.

In Yoder v. Nu-Enamel Corp. (8 Cir.) 117 F. (2d) 488, 489, the court said:

"* * * Any convincing manifestation of local law, having a clear root in judicial conscience and responsibility, whether resting in direct expression or obvious implication and inference, should accordingly be given appropriate heed."

We are of the opinion that even though a case might have been decided on another theory it does not render what was said in the court's opinion "obiter dictum" if what was said bears directly upon the theory upon which the decision proceeded and upon an issue of law treated as decisive. See, Equitable Life Assur. Society v. Davis, 192 Okl. 429, 137 P. (2d) 548.

It was held in Parks' Exrs. v. Parks, 288 Ky. 435, 156 S. W. (2d) 480, that language in a court's opinion was not "dictum" where the language was spoken in deciding the question before the court for determination. Of course, a ruling not necessary to the decision of a case can be regarded as only "dictum." Sproul v. Gambone (W. D. Pa.) 34 F. Supp. 441.

While this court concluded that the statement in State v. Lund, *supra,* repeated in State v. Nobles, *supra,* did not apply to the facts in those cases—the facts being such as not to meet the requirements of the rule suggested in the statement—and while it was referred to as merely dictum when repeated in the Nobles case, we nevertheless think that the aforesaid statement may properly apply in the instant case for the reason that defendant's motions, including his motion for a new trial, were made and reasonably based on the grounds of newly discovered evidence, or for other cause, constituting something extraneous to the action of the court. Since nothing in the record challenges the truth of his sworn statements as to what constitutes the true facts, supplemented by newly discovered evidence, we reach the conclusion that a new trial ought to be granted upon the particular facts here involved and in the interests of justice.

Reversed and a new trial granted.

MR. JUSTICE LOEVINGER, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.