In re **JOHN WARD GILLMAN EN-GRAVED JUNE 20, 1775 COPPER PRINTING PLATE: Gary Eldon Lea, Respondent,**

v.

**HERITAGE AUCTIONS, INC., Defendant,**

**State of New Hampshire, Appellant.**

**No. A11–851.**

Court of Appeals of Minnesota.

Nov. 7, 2011.

Bennett A. Myers, Bosshard and Parke, Ltd., LaCrosse, WI, for respondent.

Michael A. Delaney, New Hampshire Attorney General, Peter C.L. Roth (pro hac vice) Assistant Attorney General, Concord, NH; and David J. Taylor, Yost & Baill, Minneapolis, MN, for appellant.

Considered and decided by LARKIN, Presiding Judge; BJORKMAN, Judge; and COLLINS, Judge.*

## OPINION

LARKIN, Judge.

Appellant challenges the district court's denial of its motion to dismiss for lack of jurisdiction, arguing that the district court erred in failing to determine whether its exercise of in rem jurisdiction offends traditional notions of fair play and substantial justice. Because all assertions of in rem jurisdiction must satisfy the fairness standard set forth in *International Shoe*, the district court erred in denying the motion to dismiss without considering whether the exercise of jurisdiction comports with fair play and substantial justice. We therefore reverse and remand.

## FACTS

This appeal stems from a dispute regarding ownership of a 1775 John Ward Gilman[1] copper-engraved provincial-currency printing plate. On October 1, 2009, respondent Gary Eldon Lea purchased the printing plate at an estate sale in Minneso-

ta. Lea later contracted with defendant Heritage Auctions, Inc. to sell the printing plate at a Massachusetts auction on August 11, 2010. The auction reserve was set at $50,000, and several institutional and individual buyers expressed interest in purchasing the printing plate. On the morning of the auction, appellant State of New Hampshire asserted ownership of the printing plate and threatened legal action if it was not withdrawn from the auction. Lea and Heritage withdrew the printing plate from the auction, and the plate was promptly returned to Lea in Minnesota.

On August 13, Lea commenced a declaratory-judgment action in district court, seeking a declaration that he is the exclusive owner of the plate. New Hampshire moved to dismiss the action for lack of jurisdiction, arguing, in part, that New Hampshire does not have sufficient minimum contacts with Minnesota to satisfy the requirements of due process. The district court denied New Hampshire's motion, reasoning that jurisdiction was authorized under Minn. R. Civ. P. 4.04(a)(4), which provides for jurisdiction "[w]hen the subject of the action is real or personal property within the state in or upon which the defendant has or claims a lien or interest, or the relief demanded consists wholly or partly in excluding the defendant from any such interest." The district court concluded that the underlying declaratory-judgment action is a "pure" in rem action and that "it is not necessary to establish whether personal jurisdiction comports with due process in a pure *in rem* action." New Hampshire requested permission to file a motion for reconsider-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. The caption in the district court referred to the "Gillman" plate and that spelling is used in the caption on appeal. *See* Minn. R. Civ. App. P. 143.01 (directing that the title of an action "not be changed in consequence of [an] appeal"). But the parties indicate that the correct spelling is "Gilman."

ation, citing *Shaffer* and arguing that the district court's conclusion that a due-process analysis is unnecessary is "contrary to binding precedent from the United States Supreme Court on the question." The district court rejected New Hampshire's argument that *Shaffer* requires a due-process analysis in a true in rem action and denied its request for reconsideration. This appeal follows.

## ISSUE

Did the district court err by determining that it was not required to apply the fairness standard set forth in *International Shoe* to this in rem action?

## ANALYSIS

■■■ The existence of "[j]urisdiction is a question of law that we review de novo." *In re Comm'r of Pub. Safety,* 735 N.W.2d 706, 710 (Minn.2007) (quotation omitted). An order denying a motion to dismiss for lack of jurisdiction is appealable as of right. *See Stanek v. A.P.I., Inc.,* 474 N.W.2d 829, 831 (Minn.App.1991) (stating this principle in a personal-jurisdiction context), *review denied* (Minn. Oct. 31, 1991).

In *International Shoe,* the United States Supreme Court held that "due process requires ... that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." 326 U.S. at 316, 66 S.Ct. at 158 (quotation omitted). The United States Supreme Court stated that

> [w]hether due process is satisfied must depend ... upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process

clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations.

*Id.* at 319, 66 S.Ct. at 160.

Later, in *Shaffer,* the United States Supreme Court stated that "the time [was] ripe to consider whether the standard of fairness and substantial justice set forth in *International Shoe* should be held to govern actions *in rem* as well as *in personam.*" 433 U.S. at 206, 97 S.Ct. at 2581. The Court explained the reason for applying the *International Shoe* standard to exercises of in rem jurisdiction as follows:

> It is premised on recognition that the phrase, "judicial jurisdiction over a thing," is a customary elliptical way of referring to jurisdiction over the interests of persons in a thing. This recognition leads to the conclusion that in order to justify an exercise of jurisdiction *in rem,* the basis for jurisdiction must be sufficient to justify exercising "jurisdiction of the interests of persons in a thing." The standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in *International Shoe.*

*Id.* at 207, 97 S.Ct. at 2581 (quotation and footnotes omitted).

The Court considered the long history of jurisdiction based solely on the presence of property in a state and said, "[t]his history must be considered as supporting the proposition that jurisdiction based solely on the presence of property satisfies the demands of due process, but it is not decisive." *Id.* at 211–12, 97 S.Ct. at 2583–84 (citation omitted). The Court reasoned that " 'traditional notions of fair play and

substantial justice' can be as readily offended by the perpetuation of ancient forms that are no longer justified as by the adoption of new procedures that are inconsistent with the basic values of our constitutional heritage." *Id.* at 212, 97 S.Ct. at 2584. The Court ultimately concluded that "*all* assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." *Id.* (emphasis added).

■■■■ In arriving at this conclusion, the Court recognized that in rem jurisdiction is of three types: in rem, quasi in rem type I, and quasi in rem type II.[2] *Shaffer* involved an exercise of quasi in rem type-II jurisdiction: the controversy concerned the constitutionality of a Delaware statute that allowed Delaware courts to obtain jurisdiction over a lawsuit by sequestering any of the defendant's property that was located in Delaware. *Id.* at 189, 97 S.Ct. at 2572. But the Supreme Court did not limit its holding to type-II cases. The Court's opinion clearly indicates that it considered, and ultimately adopted, a rule of law that applies to "all" assertions of state court in rem jurisdiction, even though it was deciding a quasi in rem type-II case. The Court suggested that "jurisdiction over many types of actions which now are or might be brought *in rem* would not be affected by a holding that any assertion of state-court jurisdiction must satisfy the *International Shoe* standard." *Id.* at 208, 97 S.Ct. at 2582. And the Court stated its belief that "the fairness standard of *International Shoe* [could] be easily applied in the vast majority of cases." *Id.* at 211, 97 S.Ct. at 2583. In fact, the Court

excluded only one set of circumstances from its consideration: when no other forum is available to the plaintiff. *Id.* at 211 n. 37, 97 S.Ct. at 2583 n. 37 ("This case does not raise, and we therefore do not consider, the question whether the presence of a defendant's property in a State is a sufficient basis for jurisdiction when no other forum is available to the plaintiff.").

The concurring opinions in *Shaffer* recognize that the Court intended to announce a rule of law that would apply to all exercises of state court in rem jurisdiction-except, perhaps, where no other forum is available to the plaintiff. For example, Justice Powell stated that he "would explicitly reserve judgment ... on whether the ownership of some forms of property whose situs is indisputably and permanently located within a State may, without more, provide the contacts necessary to subject a defendant to jurisdiction within the State to the extent of the value of the property." *Id.* at 217, 97 S.Ct. at 2586 (Powell, J., concurring). And Justice Stevens wrote:

> How the Court's opinion may be applied in other contexts is not entirely clear to me. I agree with Mr. Justice Powell that it should not be read to invalidate *quasi in rem* jurisdiction where real estate is involved.... My uncertainty as to the reach of the opinion, and my fear that it purports to decide a great deal more than is necessary to dispose of this case, persuade me merely to concur in the judgment.

*Id.* at 219, 97 S.Ct. at 2587–89 (Stevens, J., concurring). Clearly, the majority deci-

---

**2.** "A judgment *in rem* affects the interests of all persons in designated property. A judgment *quasi in rem* affects the interests of particular persons in designated property. The latter is of two types. In one the plaintiff is seeking to secure a pre-existing claim in the subject property and to extinguish or establish the nonexistence of similar interests of particular persons. In the other the plaintiff seeks to apply what he concedes to be the property of the defendant to the satisfaction of a claim against him." *Shaffer*, 433 U.S. at 199 n. 17, 97 S.Ct. at 2577 n. 17 (quotation omitted).

sion[3] announced a broad holding, which is intended to apply to fact patterns that were not before the Court.

The issue of whether the *Shaffer* holding extends to true in rem or quasi in rem type-I jurisdiction is one of first impression in Minnesota. *See generally State v. Cont'l Forms, Inc.*, 356 N.W.2d 442, 444 (Minn.App.1984) (citing *Shaffer* for the proposition that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny" without considering or deciding whether the holding extends to true in rem or quasi in rem type-I jurisdiction (quotation omitted)). In this case, the district court declined to follow *Shaffer*, concluding that it is not necessary to establish that an exercise of jurisdiction comports with due process in a pure in rem action.[4] The district court reasoned that "*Shaffer*'s holding does not extend to true in rem or quasi in rem I jurisdiction. True in rem and quasi in rem I matters were unnecessary to *Shaffer*'s holding and are therefore nonbinding dicta." The district court also reasoned that "[t]here is strong discord among the courts with respect to interpretation of *Shaffer*."

"Dictum is a statement in an opinion that could have been eliminated without impairing the result of the opinion." *State v. Misquadace*, 629 N.W.2d

487, 490 n. 2 (Minn.App.2001), *aff'd*, 644 N.W.2d 65 (Minn.2002). Dictum is divided into two categories: judicial dictum and obiter dictum. Obiter dictum is Latin for "something said in passing," *Black's Law Dictionary* 1177 (9th ed. 2009), whereas judicial dictum involves a court's expression of its "opinion on a question directly involved and argued by counsel though not entirely necessary to the decision," *State v. Rainer*, 258 Minn. 168, 177, 103 N.W.2d 389, 396 (1960). Judicial dictum constitutes "an expression emanating from the judicial conscience," which is entitled "to much greater weight than mere obiter dictum and should not be lightly disregarded." *Id.* at 177–78, 103 N.W.2d at 396; *see also In re Estate of Bush*, 302 Minn. 188, 207, 224 N.W.2d 489, 501 (1974) ("Even dictum, if it contains an expression of the opinion of the court, is entitled to considerable weight."). The Supreme Court of Wisconsin has explained that

> [w]hile it is a rule of general application that the binding force of a decision is coextensive with the facts upon which it is founded, it is nevertheless also true that, when a court of last resort takes up a correlated subject-matter stating that it intends to decide it, and does so, such decision is not a mere obiter dictum. It is at least a judicial dictum.

*Chase v. Am. Cartage Co.*, 176 Wis. 235, 186 N.W. 598, 598–99 (1922).[5]

---

3. Although Justice Brennan dissented in part, he dissented only from that part of the majority's opinion that conducted a minimum-contacts analysis. *Shaffer*, 433 U.S. at 219–20, 97 S.Ct. at 2588 (Brennan, J., concurring in part and dissenting in part). He joined those parts of the Court's opinion adopting the *International Shoe* standard for all in rem cases. *Id.*

4. The district court stated that "the case at bar is a true in rem matter." But the parties agree with this court that this is not a "true"

in rem case. This case involves quasi in rem type-I jurisdiction.

5. Indeed, the Minnesota Supreme Court has, on occasion, announced a holding that was unnecessary to the decision. *See, e.g., State v. McCoy*, 682 N.W.2d 153, 158 n. 3 (Minn. 2004) ("Having concluded that evidence of similar prior conduct was not admitted against respondent, we would not necessarily have to address the district court's ruling providing for the admission of evidence under Minn.Stat. § 634.20 and the court of appeals' interpretation of the statute. However, be-

To the extent that *Shaffer*'s holding regarding the need for a due-process analysis in true in rem and quasi in rem type-I cases is dictum, it is judicial dictum: *the court of last resort took up a correlated subject-matter, stated that it intended to decide the issue, and did so.* The United States Supreme Court expressly addressed application of its holding to lawsuits regarding ownership of property located in the forum state as follows:

> [T]he presence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the defendant, and the litigation. For example, when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction. In such cases, the defendant's claim to property located in the State would normally indicate that he expected to benefit from the State's protection of his interest.

*Shaffer*, 433 U.S. at 207–08, 97 S.Ct. at 2581 (footnotes omitted). And the Supreme Court has subsequently done nothing to cast doubt on the *Shaffer* holding. *See, e.g., Burnham v. Superior Court of Cal.*, 495 U.S. 604, 622, 110 S.Ct. 2105, 2116, 109 L.Ed.2d 631 (1990) (stating that the Court was "in no way receding from or casting doubt upon the holding of *Shaffer*" in holding that an exercise of personal jurisdiction based on service on a defendant while he is temporarily present in the forum state comports with traditional notions of fair play and substantial justice);

*Rush v. Savchuk*, 444 U.S. 320, 327, 100 S.Ct. 571, 577, 62 L.Ed.2d 516 (1980) (stating that *Shaffer* held that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny").

Moreover, the authority that the district court relied on does not persuade us that it is appropriate to narrowly construe the Supreme Court's holding in *Shaffer*. The district court relied primarily on *Cable News Network L.P. v. CNNews.com*, 162 F.Supp.2d 484 (E.D.Va.2001), *aff'd in part, vacated in part*, 56 Fed.Appx. 599 (4th Cir.2003), and other federal district court cases brought under the Anticybersquatting Consumer Protection Act of 1999 (ACPA).[6] The district court in *Cable News Network* concluded that

> *Shaffer*'s language regarding true *in rem* and quasi *in rem* I matters was unnecessary to the holding and is therefore non-binding dicta. Because neither a true *in rem* case, nor a quasi *in rem* I case was before the Supreme Court in *Shaffer*, the case's holding does not reach those categories.... In sum, *Shaffer*, properly construed, holds only that quasi *in rem* II actions require the same minimum contacts as *in personam* jurisdiction actions.... More particularly, in an ACPA *in rem* action, it is not necessary that the allegedly infringing registrant have minimum contacts with the forum; it is enough, as here, that the registry is located in the forum.

*Id.* at 491 (citation omitted).

Although the jurisdictional holding in *Cable News Network* was affirmed on ap-

---

cause the court of appeals' opinion is in conflict with other court of appeals' opinions, and confusion over the application of Minn. Stat. § 634.20 is likely to reoccur, we address section 634.20 and its application in admitting evidence.").

**6.** Under the ACPA, the "owner of a mark ... may maintain an *in rem* action against an

infringing domain name (i) if the action is brought in the jurisdiction where the registrar or registry of the infringing domain name is located, and (ii) if *in personam* jurisdiction over the registrant does not exist." *Cable News Network*, 162 F.Supp.2d at 489 (footnote omitted).

peal, the United States Court of Appeals for the Fourth Circuit did not acknowledge or endorse the federal district court's conclusion that the *Shaffer* holding is non-binding dicta in true in rem or quasi in rem type-I cases. Instead, the appellate court relied on *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 225 (4th Cir.2002), a fourth circuit case that was decided after the district court's decision in *Cable News Network. Cable News Network L.P. v. CNNews.com*, 56 Fed. Appx. 599, 603 (4th Cir.2003). *Harrods* also involved a lawsuit over Internet domain names under the ACPA. On appeal, respondents, 60 Internet domain names, claimed that the district court's exercise of in rem jurisdiction violated due process because they lacked sufficient minimum contacts with the forum. *Harrods*, 302 F.3d at 224. The Fourth Circuit stated that " '[t]he minimum contacts rule of *International Shoe* applies to actions *in rem* and *quasi in rem*, as well as to actions *in personam.*' " *Id.* (quoting *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 526 (4th Cir.1987) (construing *Shaffer*).) Accordingly, the Fourth Circuit applied the minimum-contacts test to the district court's exercise of in rem jurisdiction and considered whether there had been "some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quotation omitted).

Given the Fourth Circuit's conclusion that *Shaffer* applies to all in rem actions, we are not persuaded by the federal district court's reasoning in *Cable News Network* regarding *Shaffer's* reach. Nor are we persuaded by the decisions of other federal district courts that have followed *Cable News Network*. Our review of the caselaw relied on by the district court, as well as our independent research, simply does not reveal persuasive authority, much less precedential authority, supporting the conclusion that the *Shaffer* holding is non-authoritative dictum. We therefore conclude that *Shaffer* has great authoritative weight. Our reasoning is aptly summarized by the United States Court of Appeals for the First Circuit:

> We think that federal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when, as here, a dictum is of recent vintage and not enfeebled by any subsequent statement. *Cf., e.g., Faucher v. Federal Election Comm'n*, 928 F.2d 468, 470 (1st Cir.) (court of appeals cannot assume the Supreme Court "proclaims the law lightly" when it authors considered dictum), *cert. denied*, 502 U.S. 820, 112 S.Ct. 79, 116 L.Ed.2d 52 (1991). If lower courts felt free to limit Supreme Court opinions precisely to the facts of each case, then our system of jurisprudence would be in shambles, with litigants, lawyers, and legislatures left to grope aimlessly for some semblance of reliable guidance. Nor are we alone in voicing our healthy regard for dictum that appears to have been carefully considered. *See, e.g., Nichol v. Pullman Standard, Inc.*, 889 F.2d 115, 120 n. 8 (7th Cir.1989) (court of appeals "should respect considered Supreme Court dicta"); *United States v. Underwood*, 717 F.2d 482, 486 (9th Cir.1983) (court of appeals not at liberty to "disregard guidelines" established by Supreme Court, albeit through dicta), *cert. denied*, 465 U.S. 1036, 104 S.Ct. 1309, 79 L.Ed.2d 707 (1984); *United States v. Bell*, 524 F.2d 202, 206 (2d Cir.1975) (considered dictum "must be given considerable weight and can not be ignored in the resolution of a close question").

*McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 19 (1st Cir.1991).

■ In sum, because we respect the holding of the United States Supreme Court in *Shaffer* and give it considerable weight, we hold that all assertions of in rem jurisdiction must be evaluated according to the standards set forth in *International Shoe* and more recently discussed in *Burnham. See Burnham*, 495 U.S. at 622, 110 S.Ct. at 2116 ("[T]he Due Process Clause requires analysis to determine whether traditional notions of fair play and substantial justice have been offended." (quotation omitted)).

■ In so holding, we reject Lea's other arguments in support of the district court's ruling. For example, Lea argues that in adopting the ACPA, Congress intended to narrow or implicitly overrule *Shaffer.* But courts have not treated Congress's passage of the ACPA as overruling *Shaffer. See Harrods*, 302 F.3d at 224–25 (conducting a due-process analysis under *Shaffer* in an ACPA case). Lea also argues that if *Shaffer* applies to in rem actions in general, declaratory-judgment actions should be exempted from its holding under the lack-of-an-available-forum exception. *See Shaffer*, 433 U.S. at 211 n. 37, 97 S.Ct. at 2583 n. 37. New Hampshire counters that the record does not show that no other forum is available. Because the district court did not address this argument, the record is not adequately developed regarding the availability of other forums. The issue therefore is not properly before this court for review. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (stating that an appellate court generally will not consider matters not argued to and considered by the district court); *Truesdale v. Friedman*, 267 Minn. 402, 404, 127 N.W.2d 277, 279 (1964) (stating that the record must be "sufficient to show the alleged

errors and all matters necessary for consideration of the questions presented").

■ Finally, Lea moves to strike certain statements from New Hampshire's brief because the statements fail to cite the record, cite to materials not contained in the record, and assert facts contrary to the findings of fact made by the district court in its order. The challenged statements consist of background information that is irrelevant to the jurisdictional issue presented on appeal, which is purely one of law. Because we need not, and do not, rely on the purportedly improper statements in deciding the jurisdictional issue presented in this appeal, the motion to strike is denied as moot. *See Drewitz v. Motorwerks, Inc.*, 728 N.W.2d 231, 233 n. 2 (Minn.2007) (denying a motion to strike as moot when court did not rely on the challenged material).

## DECISION

*Shaffer* requires that all assertions of in rem jurisdiction satisfy the fairness standard set forth in *International Shoe.* Because the district court did not determine whether its assertion of in rem jurisdiction is consistent with due process, we reverse the district court's denial of New Hampshire's motion to dismiss and remand for the district court to determine whether an exercise of in rem jurisdiction in this case comports with traditional notions of fair play and substantial justice.

**Reversed and remanded; motion denied.**