Lori Swanson, Attorney General, St. Paul, Minnesota; and Travis J. Smith, Murray County Attorney, Slayton, Minnesota (for appellant)
William J. Wetering, Worthington, Minnesota (for respondent)
Considered and decided by Connolly, Presiding Judge; Reilly, Judge; and Reyes, Judge.
CONNOLLY, Judge *424 The district court granted respondent's motion to suppress a blood sample that had been taken from respondent by a medical professional because the blood sample was protected by Minnesota's physician-patient privilege pursuant to Minn. Stat. § 595.02, subd. 1(d). Because a blood sample does not fall within the plain meaning of "information," the district court erred in determining that a blood sample is subject to the statutory physician-patient privilege. Accordingly, we reverse and remand.
FACTS
On June 10, 2016, a Murray County Deputy Sheriff responded to an all-terrain vehicle (ATV) accident. When the deputy arrived, he saw an ATV that looked as though it had been in a collision and respondent Heath Allen Atwood bleeding from his head, lying on the street in a pool of blood. While the deputy was stabilizing respondent's head to prevent further injury, he smelled alcohol on respondent's breath. An ambulance took respondent to the hospital.
On his way to the hospital, the deputy stopped at the sheriff's office to get a copy of the Minnesota implied-consent advisory form. At the hospital, a doctor asked the deputy to refrain from reading the implied-consent advisory to respondent because the doctor was attempting to keep respondent calm. The doctor also told the deputy that respondent was receiving a blood transfusion. Respondent was flown to another hospital for further treatment. The deputy did not read the implied-consent advisory to respondent. The deputy subsequently learned that the hospital was storing a vial of respondent's blood taken prior to the transfusion in the hospital lab. He then obtained a search warrant to seize the vial and submit it for testing.[1] Subsequent lab analysis revealed that respondent's BAC was 0.155.
Respondent was charged with two counts of fourth-degree driving while impaired. Prior to trial, respondent moved to suppress the blood sample and the subsequent BAC test results, invoking the physician-patient privilege pursuant to Minn. Stat. § 595.02, subd. 1(d). The district court granted respondent's motion, reasoning that respondent's blood sample constituted "information" subject to Minnesota's physician-patient privilege. The state appeals the suppression order in a pretrial appeal.
ISSUE
Is a blood sample "information" for purposes of Minn. Stat. § 595.02, subd. 1(d) ?
ANALYSIS
The state challenges the district court's order granting respondent's motion to suppress respondent's blood and the subsequent BAC test results, arguing that the statutory physician-patient privilege does not apply. In a pretrial appeal, the state must demonstrate that the district court's error "will have a critical impact on the outcome of the trial." Minn. R. Crim. P. 28.04, subd. 2. This requirement is satisfied when the suppression of evidence "significantly reduces the likelihood of a successful prosecution." State v. Obeta , 796 N.W.2d 282, 286 (Minn. 2011). This court has held that suppressing "[a] chemical test showing an alcohol level in excess of *425 the statutory limit" meets the critical-impact test. State v. Ault , 478 N.W.2d 797, 799 (Minn. App. 1991). Here, because the district court suppressed respondent's blood sample and the BAC evidence derived from it in a driving-while-intoxicated prosecution, the critical-impact test has been met.
"When reviewing a pretrial order on a motion to suppress evidence, we review the district court's factual findings under a clearly erroneous standard and its legal determinations de novo." State v. deLottinville , 890 N.W.2d 116, 119 (Minn. 2017), cert. denied , --- U.S. ----, 138 S.Ct. 377, 199 L.Ed.2d 278 (2017). Whether Minnesota's physician-patient privilege statute applies to respondent's blood sample turns on whether a blood sample is "information" as contemplated by the statute. This is a matter of statutory interpretation, which we review de novo. State v. Azure , 621 N.W.2d 721, 723 (Minn. 2001).
Minnesota's physician-patient privilege statute, in relevant part, provides that a "licensed physician ... shall not, without the consent of the patient, be allowed to disclose any information or any opinion based thereon which the professional acquired in attending the patient in a professional capacity, and which was necessary to enable the professional to act in that capacity." Minn. Stat. § 595.02, subd. 1(d) (emphasis added). The state does not dispute that the physician acquired the blood sample to enable him to act in a professional capacity; rather, the state argues that the nature of a blood sample is outside this statute's scope because it is neither "information" nor "any opinion based thereon."
Respondent relies on State v. Staat , 291 Minn. 394, 192 N.W.2d 192 (Minn. 1971), and State v. Heaney , 689 N.W.2d 168 (Minn. 2004), to argue that the district court correctly granted the motion to suppress his blood sample because Minnesota courts have long held that material items can be subject to the physician-patient privilege. However, as the state articulates, the relevant statements in Staat and Heaney are dicta rather than binding precedent. Thus, whether a blood sample is protected by Minnesota's physician-patient privilege is an issue of first impression.
Generally, "a ruling not necessary to the decision of a case can be regarded as only 'dictum.' " Jaeger v. Palladium Holdings, LLC , 884 N.W.2d 601, 611 (Minn. 2016) (quoting State v. Rainer , 258 Minn. 168, 179, 103 N.W.2d 389, 396 (1960) ). Dictum can be either judicial dictum or obiter dictum, depending on how involved the parties' arguments and the court's analysis are. "Obiter dictum is simply Latin for something said in passing." Brink v. Smith Cos. Constr., Inc. , 703 N.W.2d 871, 878 (Minn. App. 2005) (quotation omitted). Black's Law Dictionary defines obiter dictum as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)." Black's Law Dictionary 1240 (10th ed. 2014). Judicial dictum, on the other hand, is a court's "opinion on a question directly involved and argued by counsel though not entirely necessary to the decision." Rainer , 258 Minn. at 177, 103 N.W.2d at 396. Because it comes from deeper analysis, judicial dictum is "entitled to much greater weight than mere obiter dictum and should not be lightly disregarded." Id.
In Staat , the Minnesota Supreme Court used a four-part test to explain that Minnesota's physician-patient privilege applies when: (1) A physician-patient relationship existed, (2) the evidence acquired by the physician was "information" as contemplated *426 by the statute, (3) the information was acquired by the physician while attending to the patient, and (4) the information was necessary to enable the physician to act in a professional capacity. 291 Minn. at 398, 192 N.W.2d at 196. The contested evidence in Staat were two bottles of pills that an orderly discovered on Staat while he was a patient. Id. at 395, 192 N.W.2d at 195. The Minnesota Supreme Court ultimately held that the district court did not err by concluding that Staat failed to establish the third prong of the test because the evidence was not acquired by a physician while treating him, but by the orderly. Id. at 402-03, 192 N.W.2d at 198-99. The court noted that it did not have to analyze the first two prongs because the state had conceded those arguments. Id. at 400, 192 N.W.2d at 197. Nonetheless, the court stated that Minnesota's physician-patient privilege statute has broad language that "encompasses physical articles as well as verbal communications and any other knowledge." Id. However, since the parties did not argue whether the pills constituted "information" under the statute's plain meaning and since the court's conclusion on that issue was not essential to the disposition of the case, the Staat court's statements on that issue are mere obiter dicta, which does not bind us.
Respondent also relies on Heaney because in it, the Minnesota Supreme Court stated, "A blood sample taken for treatment purposes is information acquired by the physician that is necessary to enable him to act in a professional capacity and is included in the privilege." Heaney , 689 N.W.2d at 173 (citing Staat , 291 Minn. at 399, 192 N.W.2d at 197 ). However, this statement is also dictum. In Heaney , the contested evidence, which included both Heaney's blood sample and the hospital-conducted BAC test results, was conflated as "blood-alcohol evidence." Id. at 171. As the state points out, in Heaney , neither the parties nor the court distinguished the physical blood sample from the test results. This is significant because in a conflict-of-law analysis, the Minnesota Supreme Court considered both Minnesota's and Wisconsin's physician-patient privilege statutes. Id. at 177.
Heaney concluded that the Wisconsin privilege statute explicitly did not apply to "the type of evidence at issue." Id. at 173. Indeed, the Wisconsin privilege statute excluded any information used in homicide cases, Wis. Stat. § 905.04(4)(d) (2001-02), and "the results of or circumstances surrounding any chemical tests for intoxication or alcohol concentration." Wis. Stat. § 905.04(4)(f) (2001-02). The Heaney court concluded that either of those exceptions applied to allow the "disputed blood-alcohol evidence into court." Heaney , 689 N.W.2d at 173. The Minnesota statute, on the other hand, clearly applied to prevent the BAC test result from being admissible. Id. The court concluded that Wisconsin law should be applied because Wisconsin had the more "significant relationship with the communication." Id. at 177. Because the BAC test results were clearly privileged under Minnesota law and clearly exempted from the privilege under Wisconsin law, to reach its conclusion, the Heaney court did not need to decide that Minnesota's and Wisconsin's physician-patient privilege statutes conflicted regarding the admissibility of a physical blood sample. It only needed to find a conflict between the states' laws regarding the test results. Thus, any language related to the blood sample under Minnesota law was not necessary to the holding and is therefore dictum.
Whether a physical blood sample is protected by Minnesota's physician-patient privilege is a statutory-interpretation issue of first impression. The goal of statutory *427 interpretation is to effectuate the legislature's intent. Brua v. Minn. Joint UnderwritingAss'n , 778 N.W.2d 294, 300 (Minn. 2010). "If the meaning of a statute is unambiguous, we interpret the statute's text according to its plain language." Id. "When a statute or a rule does not contain a definition of a word or phrase, we look to the common dictionary definition of the word or phrase to discover its plain and ordinary meaning." Jaeger , 884 N.W.2d at 605 (quotations omitted). The present issue centers on the unambiguous term "information."
"Information" has been defined as "Knowledge or facts learned, especially about a certain subject or event." The American Heritage Dictionary of the English Language 901 (5th ed. 2011). According to Webster's Dictionary, "information" is "something received or obtained through informing [such as:] knowledge communicated by others or obtained from investigation, study, or instruction[;] knowledge of a particular event or situation[;] facts or figures ready for communication or use as distinguished from those incorporated in a formally organized branch of knowledge." Webster's Third New International Dictionary Unabridged 1160 (3d ed. 2002). Thus, information, by nature, is not physical and is about something. While information may be conveyed by way of a material object, such as a piece of paper, the medium by which information is communicated is not the information. On the other hand, a blood sample is material and does not, by itself, provide any information. That is, an individual cannot extract information about a patient solely by looking at a physical blood sample.
DECISION
In interpreting the plain meaning of Minnesota's physician-patient privilege statute, we conclude that the language "information or any opinion based thereon" does not extend to respondent's blood sample.[2] The district court erred by applying Minn. Stat. § 595.02, subd. 1(d), to suppress respondent's blood sample as evidence. Because we conclude that a physical blood sample is not protected under Minnesota's physician-patient privilege statute, we reverse the district court's order granting respondent's motion to suppress that evidence.
Reversed and remanded.

At oral argument, in response to a question from the court, appellant's counsel informed the court that because of the blood transfusion, securing a search warrant addressed to the respondent to take a sample of respondent's blood would not have provided useful results for respondent's blood alcohol concentration (BAC).

At oral argument, the state conceded that if the hospital had actually done a blood test, then those test results would be covered by the privilege because that would contain information communicating a blood-test result. We agree.